COTTON FLETCHER *v.* MORTON COLE.

*Sale.   Delivery and acceptance.   Rescinding contract.*

The defendant and one M. entered into a contract for the sale of a quantity of pine boards, which the defendant was to procure to be sawed from logs belonging to him, then selected and marked with the initials of M.'s name, and which M. was to receive at the mill, at the measurement made by the sawyer, and for which he was to pay at a rate agreed upon for each one thousand feet; and it was understood, that M. was not to take the lumber from the mill yard, until he paid for it. But from time to time, as the boards were sawed and measured by the sawyer, M. drew them from the mill yard, in the absence of the defendant, and piled them in an open space near a building which was occupied by him; but he expressed dissatisfaction with the sawyer's measurement, and repeatedly declared, that he would not take them at that measurement;—and it was held, that the defendant was entitled to prove, as tending to show that the boards had never been delivered and accepted, the declaration of M., made when he was called upon by the defendant's clerk for payment for the boards, that when the defendant "furnished lumber according to contract, he would pay for it.''

It is not essential to the rescinding of a contract, that it should in all cases be by the mutual consent of the parties. If, by the terms of the contract, concurrent acts are to be performed, as a delivery of the property by one party and a payment of the price by the other, if either party should refuse to perform his part of the contract, the other party may treat it as an abandonment of the contract and justify a rescision of it.

TRESPASS for a quantity of pine boards. Plea, the general issue, and trial by jury, September Term, 1849,—BENNETT, J., presiding.

The plaintiff, as constable of the town of Colchester, had attached the boards in question as the property of one Myers, and the defendant, after the attachment, had taken them and converted them to his own use. It appeared, that the logs, from which the boards were sawed, were drawn by the defendant to the saw mill at Winooski Falls in March, 1847, and were then his property ; and the question was, whether the lumber had been sold by the defendant to Myers, so as to subject it to attachment upon his debts.

It appeared, that in March, 1847, the defendant and Myers bargained for the sale of a quantity of lumber to Myers, and went together to the saw mill, where the logs lay, and selected certain

logs, from which Myers was to have his lumber, and they were
marked, in chalk, with the initials of Myers' name; and it was
agreed, that Myers should have the boards sawed from these logs, at
the measurement of the sawyer, as he should measure them after
they were sawed, at $19,00 *per* thousand feet.; and the defendant
directed the sawyer to saw the logs as Myers should direct; and
they were to be sawed at the defendant's expense. The evidence
on the part of the defendant tended to prove, that it was at the same
time agreed, that Myers should not take the lumber from the mill
yard, until he had paid for it.

The evidence on the part of the plaintiff tended to prove, that the
lumber was sawed, by the procurement and at the expense of the
defendant, in March, or early in April, 1847, and that, while the
sawyer was sawing it, Myers, in the absence of the defendant, re-
moved the principal part of the lumber away from the mill yard,
some six or eight rods, and piled it in an open space near a build-
ing in part occupied by him; and that he found fault with the mill
measure, saying to the sawyer, and to one Talcott, who was in the
employment of Cole, after he had removed a part of the lumber, that
he would not take it at the mill measure, as he was dissatisfied with
the manner in which it was measured; and that he at the same time
sent word by the sawyer and by Talcott to the defendant, that he
would not take it at the mill measure, on account of his dissatisfac-
tion with the measure; and that the next morning after he had sent
such word to the defendant, which was at evening, the residue of
the lumber, consisting of one or two logs, was sawed, and Myers re-
moved it and piled it with the other, saying at the same time, that
he would not take it at the mill measure, on account of dissatisfac-
tion with the measurement.

The defendant's testimony tended to prove, that in the evening,
when Myers sent such word to the defendant, who lived about two
miles from the mill, a portion of the lumber lay in the mill and by
the side of it, as it had been thrown out by the sawyer, and that the
defendant, the same evening, sent his clerk to Myers for the pay for
the lumber; that Myers refused to pay for it, and the clerk commu-
nicated this to the defendant the same evening, and at the same time
Talcott informed the defendant, that Myers had told him he would
not take the lumber at the mill measure; that the defendant there-

upon directed Talcott to go to the mill the next morning and remove and pile up the lumber, and to tell Myers, that he could not have it; that Talcott did so inform Myers,—but that when he arrived at the mill Myers had removed a part of the lumber and piled it at the place where it was, when attached by the plaintiff, and was then moving the residue, and said at the same time, that he would not take it at the sawyer's measure; and that Talcott, after this, assisted Myers in loading some of the lumber, and Myers removed it and placed it with the other, where the whole remained until attached by the plaintiff in July, 1847.

The defendant offered to prove, that when his clerk called upon Myers for the pay for the lumber, as above stated, Myers said to him, that when the defendant " furnished lumber according to contract, he would pay for it." To this evidence the plaintiff objected, and it was excluded by the court.

The plaintiff gave evidence tending to prove, that all the lumber in question had been measured by the sawyer, at the mill, before it was removed, and the mill measure marked upon the boards, and that the defendant had been furnished with the sawyer's measurement, and had charged the amount upon his book to the defendant, at the price agreed upon, and that the charge continued thus upon his books until some time after September 9, 1847, when it was altered and the words " not delivered " written under it. The defendant took and sold the lumber September 8, 1847.

The defendant requested the court to charge the jury, that in order to have the removal by Myers operate as a delivery, to vest the property in Myers, it must have been done with an intention on the part of Myers to accept it at the measurement, as it had been measured by the sawyer ; and that if any thing remained to be done, to ascertain the quantity, the property did not vest in Myers ; and that if it was the intention of Myers, at the time he removed the lumber, to have it measured before he accepted it, no property vested in him by such removal; that if the jury should find, that the contract was, that Myers should not have the lumber, until it was paid for, or if they did not find, that any agreement was made as to the time of payment, the removal by Myers, before payment, was tortious, and no property thereby vested in Myers; that as the property was conceded to have been the defendant's, it was necessary for the plaintiff

to show a complete sale and delivery to Myers,—and that there must have been a possession taken by Myers, with the knowledge and consent of the defendant; that if the jury should find, that Myers objected to receiving the lumber at the measure, at which the defendant claimed he should receive it, and the parties never came to an agreement upon this point, and disagreed as to it after the lumber was removed, no property vested in Myers; that it was competent for the defendant, if the lumber was not sold in the log, but was to be measured and delivered after it was sawed, to object to its delivery, even though Myers claimed the lumber according to the contract,—and that in that event no property passed, and the defendant would only be liable for breach of contract to Myers; or, if they should find the contract rescinded, the plaintiff could not recover.

The court charged the jury, that if the original contract between Myers and the defendant, for the sale of the lumber, had been rescinded by the parties to it, the plaintiff could not recover; that it was competent for the parties to the contract to put an end to it at any time before the attachment, if it were done by their mutual understanding and consent; but that it was not competent for either one of the parties to do it without the consent of the other; and that it was for the jury to inquire, from the whole testimony bearing upon this point, whether in fact the parties did rescind the contract.

In regard to the delivery of the lumber the court instructed the jury, that it is a general principle, that when property is bargained and sold, but not on time, the delivery of the property by the vendor and the payment of the purchase money by the vendee are concurrent acts; and that, when there is no agreement for time, it is of course to be taken as a cash sale;—that in the present case it appeared by the defendant's evidence, that it was agreed, in express terms, that the lumber was not to be delivered, until paid for ; but that the defendant might, if he thought proper, waive the payment, and deliver the lumber without exacting payment down, and if he did so, he could not afterwards assert such right and urge it as a reason, why the property did not pass to Myers, so as to subject it to attachment; and that if, from all the testimony bearing upon this point,—the court referring the jury to it,—the jury found, that the defendant had delivered the lumber to Myers, waiving his right to

Fletcher *v.* Cole.

demand payment at the time, or, after Myers had taken possession of the boards, when sawed, and removed them from the mill yard, had acquiesced in his having the possession without having paid the purchase money, and treated the lumber as being in Myers' control, under the contract, the verdict should be for the plaintiff, but otherwise for the defendant.

In regard to the damages the court charged the jury, that, if they found for the plaintiff, the rule of damages would be the value of the lumber at the time it was taken by the defendant; and that they might, in their discretion, add to the value the interest upon it from the time it was taken to the time of trial, but were not bound to do so.

Verdict for plaintiff. Exceptions by defendant.

*A. Peck* for defendant.

*B. Rixford* and *Wires & Peck* for plaintiff.

The opinion of the court was delivered by

KELLOGG, J.    The plaintiff, as an officer, having attached the lumber in question upon legal process against one Myers, and the defendant having subsequently taken the lumber and converted it, this suit was brought to recover the value of it.   It being conceded at the trial, that the defendant was the owner of the lumber in question shortly previous to the attachment, it became important to the plaintiff to show a sale and delivery of the same by the defendant to Myers, so that the property thereby vested in Myers; and testimony was given by the plaintiff, tending to prove that fact.   The defendant introduced evidence tending to show, that the lumber never was delivered.   The defendant offered to prove the declaration made by Myers to the clerk of the defendant, when he called upon him to pay for the lumber, " that when the defendant furnished lumber according to the contract, he would pay for it," but the same was excluded by the county court;—and in this we think the court erred. The proof thus offered and excluded, in connection with the repeated declarations of Myers, while removing and piling the boards, that he would not take them at the mill measure, which, by the terms of the contract, he was bound to do, had a direct tendency to show,

that at that time he had not *accepted* the boards. The contract respecting the lumber was executory, and of course so remained, until executed by a delivery and acceptance of the boards. It is not pretended, that at the time of making the contract, the property vested in Myers. The logs were to be sawed into boards by the defendant and measured by the sawyer, before a delivery was contemplated. Until a consummation of the contract by delivery by defendant and acceptance by Myers, the title to the lumber would remain in the defendant. The testimony should have been admitted.

The court were requested to instruct the jury, that if they found the contract was rescinded, the plaintiff could not recover. In answer to this request, the court informed the jury, that if they found the contract was rescinded, the plaintiff could not recover, but their verdict would be for the defendant; that it was competent for the parties to the contract to put an end to it, at any time before the attachment, if it was done by their mutual *understanding* and *consent ; but that neither party could do it without the consent of the other*. This charge appears to us to be erroneous. Though it be true, that contracts may be rescinded by the *mutual consent* of the parties, we think it equally true, that, under certain circumstances, one of the contracting parties may rescind, without the consent of the other. For instance, where, by the terms of the contract, concurrent acts are to be performed, as a delivery of the property by one party and a payment of the price by the other, if either party should refuse to perform his part of the contract, the other party would be at liberty to treat it as an abandonment of the contract and justify a rescision of it. In the case at bar, the evidence tended to prove, that the defendant was entitled to the purchase money upon the delivery of the lumber, and that, when the lumber was in a condition to be delivered, Myers refused to perform his part of the contract by receiving the boards at the mill measure and paying the purchase money, and that thereupon the defendant rescinded the contract and appropriated the lumber to his own use,—as he might well do provided the facts were as his evidence tended to prove. And it seems to us, that the county court should have so instructed the jury.

The judgment of the county court is reversed, and the case remanded for a farther trial.