GEORGE WEBSTER *et al.*

· v.

FLAVEL K. GRANGER *et al.*

1. SALE OF PERSONAL PROPERTY—*delivery of goods sold* is not necessary to pass title, as between the parties to the sale.

2. SALE OF GOODS BY SAMPLE—*delivery ticket.* Where goods in the hands of a carrier are sold by sample, and a delivery ticket, in the form of an

order, by the proper railroad or station agent, to deliver the goods therein described to the person therein named or bearer, is delivered to the purchaser, with a sample, the title to the goods is thereby completely vested in the purchaser, and if they are afterwards destroyed it is his loss, and he is liable for the price agreed on.

3. There can be no custom giving a purchaser, by sample, 24 hours, or any other time, to examine the goods. He purchases by sample, and if the goods do not prove equal to the sample, he may return them, or sue for and recover the difference.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HOWE & RUSSELL, for the appellants.

Messrs. RUNYAN, AVERY & COMSTOCK, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was assumpsit, on the common counts, for goods (flax seed), sold and delivered by the plaintiffs to the defendants, brought to the Superior Court of Cook county, resulting, on a trial by the court without a jury, in a finding and judgment for the plaintiffs. The defendants appeal, and insist the finding is not sustained by the evidence—that, at most, it establishes a contract of sale, and not an actual sale of the flax seed.

Appellants contend, they had a reasonable time in which to examine and remove the goods, and until that time elapsed the title was not in them.

The flax seed was shipped by appellees to their commission merchants, Foss & Co., of Chicago, for sale. There were one hundred and thirty-four sacks "on the track" at the Galena depot, and Foss sold them, by sample, to appellants, at one dollar and fifty-five cents per bushel, delivering them a sample and a delivery ticket therefor. This was on Saturday, 7th October, 1871, about noon of that day. The goods were destroyed by the October fire.

It was held in *Michigan Central Railroad Co.* v. *Phillips et al.* 60 Ill. 190, that the delivery of a bill of lading, unin-

dorsed, did not transfer a merely equitable title, like the delivery of an unindorsed note. It gave as valid and effectual title to the goods as could be obtained by the actual delivery of the goods themselves.

The only difference between the bill of lading and a delivery ticket is, that in the former the goods may not have started on their destination, in the latter the purport of the ticket is, they have actually arrived, ready to be delivered to the holder of the ticket.

It is understood, this ticket is in the form of an order, upon the proper railroad or station agent, to deliver the goods described in the ticket to the person named in it, or to bearer, and is in common use for the delivery of grain.

By this order to deliver the goods to bearer, and appellants being the bearer, they were thereby vested with all the necessary indicia of ownership of the goods, and could have transferred the title to them to a purchaser from them. They had full power to sell the moment they became possessed of the ticket, even if the payment of the money was a condition precedent, the circumstances proved showing a waiver of this condition by the seller. Can it be doubted, if, on the receipt of this delivery ticket by appellants, they had soon after found a purchaser for these goods at an advance, that they would not have sold them ? The purchaser from them would certainly have acquired the title to the goods.

We have no doubt the title vested in appellants by their purchase, and acceptance of the delivery ticket.

It is urged by appellants, that the custom governing sales of this character is, that the purchaser has twenty-four hours in which to examine the goods after taking possession. This can hardly be, when the sale is by sample. The purchaser buys by sample, and has no occasion to examine the goods. Should they prove, on examination, after he has them in possession, to be not equal to the sample, he may return them, or sue for and recover the difference. It would be impossible to do business in any great mart of trade in any other way.

Millions are involved in purchases by samples, and they, with tickets, pass as readily as current bank notes. It is absurd to say, such purchasers have twenty-four hours, or any other time, in which to inspect the goods.

Here was a full delivery of these goods by symbol, and appellants could have passed the title to their vendee in the same way. *Michigan Central Railroad Co.* v. *Phillips, supra.*

We repeat, after the delivery ticket was passed to appellants, there was nothing for appellees to do. They had parted with their control over the goods, and the same became vested in appellants, who were to weigh them and pay for them.

This purchase was made at noon of Saturday, and appellants had several business hours of that day in which to remove the goods. They were at their risk, and could have maintained replevin for them.

We can not appreciate the argument of appellants, that the delivery ticket was not a delivery of the goods for any other purpose than for examination. The examination of the sample was an examination of the goods, and there was an implied warranty that the bulk should equal the sample.

It is said by appellants, that delivery alone does not pass title. That may be in some cases, they depending on their circumstances. Nor is delivery necessary to pass title as between the parties, as this court has often held.

But in this case, every element of a sale and delivery exists, the sellers having nothing more to do with the goods, but to receive the account of weight from appellants, and the agreed price. The price was fixed, and the goods placed under the control of appellants, and they should pay for them as they agreed. See *Peters et al.* v. *Elliott et al., post,* p. 321.

The judgment is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT dissenting.