# GEORGE A. HUNTER
## v.
## JOHN H. GORDON ET AL.

*Agency—Sales—Warranty — Breach — Correspondence — Meaning of —Evidence.*

In an action to recover upon an alleged breach of warranty of the quality of certain hams, this court holds that the defendant was the agent of the plaintiff in the purchase of the same, not the vendor thereof, and that the judgment against him can not stand.

[Opinion filed September 11, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. PAGE & BOOTH, for the appellant.

Messrs. JOHN WOODBRIDGE and DALE & FRANCIS, for the appellees.

GARY, J.   This was a suit by the appellees against the appellant to recover upon a breach of warranty of the quality of hams shipped by the appellant from Chicago, Illinois, to appellees at Glasgow, Scotland.

The evidence as to the condition of the hams when they left Chicago was all from the appellant, and as to their condition on arrival at Glasgow, all from appellees, and neither side had any opportunity to controvert anything the other asserted upon those subjects.   The parol testimony in the case related only to those conditions, and to the meaning of a cipher in which the parties conducted their cable correspondence.   Their relations to each other must be ascertained from that correspondence and previous letters.   The appellees say they were purchasers of the hams from the appellant; he says he was their agent, buying for and shipping to them, for a commission.   It adds nothing to the case of the appellees that they, in their depositions, swear that they bought; that the appellant warranted; for they did not meet face to face.   So much of the correspondence between them, before the transactions not in controversy, as the record contains, is as follows :

First : A letter from appellees to appellant, dated September 18, 1884, as follows:

"*Dear Sir:* We should be glad now to have your regular advices about bacon stuffs, as the season is about to begin.

Last year you were too long in communicating with us to get properly started.

"As we understand the terms, you work for one per cent commissions making out the invoices in American money and converted into British money at the exchange you negotiate the drafts at. Please include in your cable offers and quotations one per cent for us.

"Last year we found you were always offering Teufel's brand, is one which we do not like. Can you not get into the way of working Moran & Healy's, which is well liked here?

"Todays values are 60 for L. C. hams, 16, 18, 50 for C. C. bacon, 34 for shoulders.

"We should be glad to learn what the prospects are as to the quantity of hogs in winter and how prices are expected to run.

"The home supply of bacon is expected to be large this season.

"Kindly write and confirm terms of working that we may get started in proper time.

"We have a small sized code of Cunningham & Hunter's and suppose this is what you still use.

"Could you buy special bargains at any time if we left discretionary orders for hams and shoulders in your hands?

"What is likely to be the course of market for beef rumps this season?

"We like to get our cables with prices on Tuesday morning."

Second: A letter from the appellant to the appellees, dated October 29, 1884, containing the following:

"*Dear Sir:* I have your favor of 16th instant and know contents.

"Orders: I thank you for and confirm:
50 boxes L. C. hams, 17, 18 @ 49, shipt all Nov.
100 " " " " " @ 49, Tobey & Booth's.
50 " " " " " 16 @ 48, shipt. all Nov.
Plankington & Armour, Milwaukee.

"These have my best attention.

"Prices: You may rest assured that you get the lowest.

Hunter v. Gordon.

I put them in cif. because I think better for you to have a definite price, so that you know exactly what you are doing. On the first three lots I sold you, the way freights and exchanges are, I will not have one-half per cent commission. The first lots I cabled prices without any return to you, as no arrangement had been suggested, but all others bear one per cent return.

"Markets have been easier but not for hams. I can not duplicate the sales made to you. I have been trying hard to get Tobey & Booth and Moran & Healy to come down, but so far I can not move them. In fact my offer of the 27th inst. was given without authority, though I knew I could get them to accept. M. & H. are at the same price, forty-nine cents. I will get averages as light as possible. Tobey's will not be over seventeen pounds. I expect Moran's probably eighteen pounds. I will advise you regularly, and hope that business will continue good." *  *  *

Third : A letter from appellees to appellant, dated February 7, 1885, as follows :

"*Dear Sir:* We have your favor of 26th ult., but you write us far too seldom; you should give us a market report once a week. You write that you have bought the rumps, but never say the brand; how can we sell to arrive without knowing this. We must beg of you to write oftener. We never feel sure what you have actually done until we get the invoices, sometimes weeks after.

"What is the cause of the scarcity of rumps? Do you mean they can not be had at any price? and will the higher prices not bring them on the market again?

" Mr. Lipton once told us that he had an arrangement with his Chicago broker that for an extra one per cent he took risk of allowances for taints in beef shipments during the summer. Would you be prepared to do this?

"Hams are very dull; we are offering your last shipment of Moran & Healy's, 16 Ls. at 47, 3 box weights landed, and have not made a sale. If it were not for Lent beginning in a fortnight, we think hams would improve, as arrivals would be lighter, but we do not know how Lent may affect the demand.

"Shoulders are lower 27, 1, box weights most obtainable; these last Botsfords are not very nice; too salt, and very dark in the meat."

The next communication shown throwing any light upon this case, is a cablegram, July 10, 1886, from the appellant to the appellees, which, when translated, reads: "I offer long cut hams 18 to 20 lbs. average, at 50 shillings 9 pence cif. 100 boxes Barnes-Cherry brand, quality very good. Only offer July. Market firm; difficult to buy at quotations."

"Cif" meant cost of merchandise with freight and insurance to Glasgow added. To this appellees answered: "We order 50 boxes long cut hams at 45 shillings per cwt. cif. under 19 pounds July," and appellant replied, "I renew cable offer of 10th." July 16th the appellees cable, "We order 50 boxes L. C. hams, 18 to 20 pounds, average, at 49 shillings and 6 pence per cwt. cif. offer L. C. hams, 16 pounds, Moran's, prompt shipment." Appellant replied, "Can not execute your order unless you increase limits one shilling. I offer 50 boxes Plankington's long cut hams, 16 pounds average, at 53 shillings per cwt. cif. shipment next month."

Then appellees cable, "Buy long cut hams, 16 pounds average, Plankington's, at 53 shillings per cwt. cif. next month, 25 boxes, shipment first half of August. We order 25 boxes long cut hams 18 to 20 pounds, at 50 shillings and 6 pence per cwt. cif." Then appellant cables, "1 have bought and am shipping 25 boxes long cut hams 18 to 20 pounds, at 50 shillings and 6 pence per cwt. cif. I offer 50 boxes long cut hams, 16 pounds, Plankington's, shipment next month, at 55 shillings and 3 pence per cwt. cif."

Then appellees cable, "We order 25 boxes long cut hams, 18 to 20 pounds average, at 50 shillings and 6 pence per cwt. cif. Telegraph immediately if order for 25 boxes long cut hams, 16 pounds Plankington's, at 53 shillings, 25 boxes long cut hams 18 to 20 pounds, at 50 shillings and 6 pence, given in our cable of yesterday, has been executed." To which appellant replied, "Have bought altogether 50 boxes long cut hams 18 to 20 pounds average, at 50 shillings and 6 pence per cwt. cif."

Hunter v. Gordon.

The present controversy relates wholly to the hams mentioned in this last cablegram, and the only question the court is called upon to decide is, whether the appellant is a vendor of the hams to the appellees, or their agent buying for them under their instructions or orders. Turning back to the first letter of appellees, it is clear that by that letter the relation between the parties was not that of vendor and purchaser, but of principal and agent. " You work for one per cent commission." "Could you buy special bargains at any time if we left discretionary orders for hams and shoulders in your hands?" If a meaning is to be studied out of the sentence, "please include in your cable offers and quotations one per cent for us," it is probable that the appellees desired that the cablegrams should represent the cost " cif." to be one per cent higher than it really would be to themselves, for some purpose undisclosed.

There is some difficulty in reconciling the words, " on the first three lots I sold you " in the letter of the appellant with the theory that he was an agent and not a vendor; but the hurried correspondence of busy merchants is not to be construed by rules applicable to the leisurely essays of a Macaulay. The same sentence concludes "the way freights and exchanges are, I will not have one-half per cent commission."

In the last letter of appellees they propose to the appellant an extra one per cent if he would take some sort of risk for taints, but there is no hint in the evidence that any arrangement upon that subject was ever made between them. It should be borne in mind in reading the cablegrams, that the appellant was not a manufacturer of the product in which he dealt; that he kept no stock on hand; that the order he filled was received before the goods were bought; and that the whole tenor of the correspondence, whether by letter or cablegram, shows that the appellees knew his relation to the products. His first cablegram concludes, " difficult to buy at quotations." In one of theirs they say, " buy long cut hams." True, his language relates to other hams than those in controversy, but it would be a mere pretense to say that there was any difference between one transaction and another, as to the relation of the parties to each other.

As to the first twenty-five boxes of the fifty in controversy the appellees cabled, "we order," etc., and the defendant replies, "I have bought and am shipping." As to second twenty-five boxes they next cabled, "we order," etc., and "telegraph immediately if our order * * * given in our cable of yesterday has been executed." To this appellant replied, "Have bought," etc. The hams were shipped by the appellant under bills of lading making them deliverable to his own order at Glasgow, and this is regarded by the appellees as conclusive that he was a principal and vendor and not an agent. But the course of business made this necessary.

The appellant was not in funds from the appellees with which to buy; funds with which to pay for the hams here were raised from banks, by the sale of drafts on the appellees, with bills of lading and policies of insurance attached, and the freight followed the goods. No other course of business was practicable, if he was an agent, but without funds, to buy. It is not necessary to review the subsequent correspondence between the parties; it is not inconsistent with the position of either party as to the relations of the appellant and appellees.

They sent to him an account of their loss, in ambiguous phrase as to whether they looked to him for reinbursement, or for such exertions as would procure it from the packers; they claimed he was habitually a negligent correspondent, even in previous years, as their letters already copied show, an l his continued negligence is no admission of any claim upon him.

On the whole case it is the judgment of this court, that whether the parties occupied the relations of vendor and vendee, or agent and principal, is a question to be settled by a review of what passed between them before, and contemporaneously with, the dealings under consideration; and from that review the appellant was the agent of the appellees and the finding and judgment against him are erroneous, and should be reversed.

*Reversed and remanded.*