# Union Stock Yard and Transit Company v. Mallory, Son and Zimmerman Company.

1. DELIVERY—*What is Sufficient.*—An order upon the bailee, in whose custody the property in question is, to deliver it to a person named in the order, the order being delivered to the agent of such person, is a good delivery.

2. SPECIAL AGENTS—*Acts in Excess of Authority.*—Where an agent received an order to buy a load of cattle for his principal, and bought two loads, one of which he shipped to his principal, and the other he embezzled, *it was held,* that by the purchase of one load his authority to buy was exhausted, and if it appeared that the load shipped to his principal was purchased before buying the second load, then the principal acquired no property in the cattle purchased after the agent's authority was exhausted.

3. PRINCIPAL AND AGENT—*Of Two Innocent Persons Which Should Suffer.*—Where property is purchased by an agent with a fraudulent intent to apply it to his use, and does so, contrary to the authority received from his principal, as between him and his principal the latter will neither be bound nor acquire any property by it, while the seller may be able, as an innocent party, to hold the principal for the price, upon the ground that both being equally innocent, the principal having put it in the power of the agent to defraud, is the one who must suffer.

4. FORGED ORDERS—*Delivery of Property—Custom.*—Where prop-

erty is delivered upon a forged order, the person making the delivery is not protected by it, and is liable for the value of the property. Custom can not make valid a delivery upon a forged order.

5.   RESCISSION—*Of Contracts May Be Inferred—Effect of.*—Contracts may not only be rescinded by mutual consent, but a rescission may be inferred from the conduct of parties. By rescission each party is remitted to his original right.

6.   TROVER—*What Necessary to Maintain.*—To maintain the action of trover the plaintiff must have, at the time of the conversion, a complete property, either general or special, in the property, and actual possession of a right to immediate possession.

MR. JUSTICE GARY dissenting.

Memorandum.—Assumpsit.   Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding.   Heard in this court at the March term, 1894, and affirmed.   Opinion filed July 2, 1894.

## STATEMENT OF THE CASE.

Samuel Fleischman, for a year or two prior to March 14, 1890, was a cattle buyer at the Union Stock Yards, in Chicago.   He did an extensive business, chiefly in acting as buyer or agent for butchers and cattle dealers who resided outside the city of Chicago.   One of the persons for whom he so acted was a Walter Bussell, of Detroit.   The business was conducted about as follows:   Bussell would notify Fleischman, by letter or wire, when he desired cattle. Fleischman would go into the yards, pick out such cattle as, in his opinion, suited the requirements of his principal, negotiate with the commission man to whom the cattle desired by Fleischman had been consigned, and, if the price of the cattle was satisfactorily arranged, buy them; thereupon the commission man and Fleischman would go to the weighmaster of the stock yard company, by whom was made out a scale ticket, giving the number and weight of the cattle, from whom purchased, to whom weighed, and containing other memoranda respecting the sale, which was delivered to the seller.   The scale ticket was then taken by the seller to his office, and the price of the cattle sold being paid by the buyer or agent, or a credit given for the price thereof, the seller gave to the buyer an order upon the stock yard com-

pany to deliver the cattle so sold.   Upon presentation of this
order to the stock yards company, or its employes in charge
of deliveries of cattle, the cattle mentioned in the order
were turned over to the buyer or agent for shipment or
other disposition, as will be mentioned later.

Fleischman had acted as the agent of Bussell in the pur-
chase of cattle in the way described, for a period of some
thing over one, and less than two years; say fifteen to-
eighteen months prior to May 14, 1890.   During this time
he also purchased cattle for other non-resident butchers and
cattle dealers, notably H. Phillips and L. Fleischman.

On May 13, 1890, Bussell, at Detroit, telegraphed to
Fleischman, at Chicago, to buy him (Bussell) "a load of
cattle, if just right, if they are my kind and come right."
On the morning of May 14, 1890, Fleischman told Mr. Zim-
merman, of the plaintiff company, that he had an order
from Bussell for cattle, and between nine and ten o'clock
on that day the plaintiff, acting through Mr. Zimmerman,
sold twenty-seven head of cattle, and delivered to Fleisch-
man an order, as follows :

"CHICAGO, May 14, 1890.
Union Stock Yard & Transit Co.:
      Please deliver to    Bussell
         27 cattle         Hogs             Sheep
      Block    Pen     Division D, Scale 5.
                    MALLORY, SON & ZIMMERMAN CO.,
                            Per WM. BUHLMAN."

Fleischman took the order and later in the day sold the
cattle mentioned therein to Holmes & Pattison, a commis-
sion firm doing business at the stock yards, and going to the
scales used in connection with the block and pen where
were the cattle, with a representative of the firm of Holmes
& Pattison, indorsed the order as follows:   " To Holmes &
Pattison.   Bussell.   S. Fleischman."

Thereupon the twenty-seven cattle mentioned in the
order were delivered to Holmes & Pattison by the stock
yards company.

On the next day the officers of the plaintiff company
heard rumors to the effect that Fleischman had run

away, and thereupon Mr. Zimmerman and Mr. Mallory went to the Transit House, where Fleischman lived, for the purpose of learning "whether he was going to pay for the cattle," but did not succeed in finding him there, nor indeed, so far as appears, did they ever find him. Not finding Fleischman at the Transit House, the plaintiff company made out and forwarded the following bill and letter to Mr. Bussell, at Detroit:

"U. S. Yards, Ill., 5/14, 1890.
Office of Mallory, Son & Zimmerman Co.
  Sold Wm. Bussell.

| Date. | Cattle. | Hogs. | Sheep. | Weight. | Off Price. | Amount. |
|---|---|---|---|---|---|---|
| 5/14 | 6 | | | 6,150 | 3.10 | $190.65 |
| | 3 | | | 3,170 | $3\frac{1}{4}$ | 103.02 |
| | 2 | | | 2,250 | 4c. | 90.00 |
| | 9 | | | 7,580 | 3.65 | 276.67 |
| | 3 | | | 1,500 | 3c. | 45.00 |
| | 3 | | | 3,200 | 3.40 | 108.80 |
| | 1 | | | 960 | 3.40 | 32.64 |
| | 27 | | | | | $846.78 |

Dear sir: We sold the above cattle to S. Fleischman, for your account on the date as above, but have not received payment for same. Please remit at once, and oblige,
            Yours respectfully,
                Mallory, Son & Zimmerman Co.,
                        Per Bryant."

Mr. Bussell replied that he had neither ordered nor received from Mr. Fleischman the bill of cattle covered by the communication of May 14th, and he should, therefore, decline to pay the account.

The next step taken by the plaintiff company was to forward to the stock yard company the following communication:

"Union Stock Yard & Transit Company,
        To Mallory, Son & Zimmerman Co., Dr.
  To 27 cattle, as per bill attached.........$846.78.
These cattle were sold to S. Fleischman, May 14th, for

account of Wm. Bussell, Detroit, and we gave the order to Wm. Bussell, direct. Your employes delivered the cattle to other parties; and as Mr. Bussell did not get the cattle, he refuses to pay for them; and as you delivered the cattle to others than Wm. Bussell, we look to you for the amount.

Please adjust same at once, and oblige.

MALLORY, SON & ZIMMERMAN CO.,<br>
Per C. A. MALLORY, Treas."

The following reply was thereupon made by the defendant company, appellant in this court:

" THE UNION STOCK YARDS COMPANY, OF CHICAGO,

JAS. H. ASHBY, General Superintendent.

UNION STOCK YARDS, CHICAGO, May 24th, 1890.

MALLORY, SON & ZIMMERMAN CO., Union Stock Yards,
      City.

Gentlemen: Referring to your claim of $846.78, under date of the 23d instant, account of alleged wrong delivery of cattle by the employes of this company, would say, that I find, upon examination of your order, that these cattle were properly delivered on it, as directed, and consequently we can assume no responsibility in the matter.

Very respectfully,<br>
JAMES H. ASHBY,<br>
General Superintendent."

Subsequently, and on June 18, 1890, formal demand for the possession of the twenty-seven cattle was made by the plaintiff company upon the defendant company, and at a later period·an action of trover for the conversion of the twenty-seven cattle was commenced by the appellee against the appellant, and proceeded to judgment for $1,004.25, being the sum for which the twenty-seven cattle were sold, and interest thereon from the·date of sale to the date of. trial, and from that judgment the stock yard company has appealed.

APPELLANT'S BRIEF, WINSTON & MEAGHER, ATTORNEYS.

It may be stated, as a general rule, that whenever a person has held ·out another as his agent authorized to

act for him in a given capacity; or has knowingly and without dissent permitted such other to act as his agent in such capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent, authorized to act in that capacity; whether it be in a single transaction or in a series of transactions, his authority to such other to act for him in that capacity will be conclusively presumed, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence, and he will not be permitted to deny that such other was his agent, authorized to do the act that he assumed to do, provided that such act is within the real or apparent scope of the presumed authority. Mechem on Agency, Sec. 84, p. 60.

Appellee's Brief, Peck, Miller & Starr, Attorneys.

A custom, in order to be binding, must be proved to exist, and must be proved to be (1) immemorial, (2) continued, (3) peaceable, (4) reasonable, (5) certain, (6) compulsory, (7) consistent, and must, when allowed, receive a strict construction. Bl. Com., pp. 76, 79.

A custom to avail as such must be ancient, certain, uniform, reasonable, and so general as to afford a presumption that the parties contracted with reference to it. Dixon v. Dunham, 14 Ill. 324; Kinney's Digest, 694.

Where a sale is avoided by a vendor for fraud on the part of the person with whom he dealt, it is as to the buyer as if no sale had ever been made; as if the original taking and parting with possession had been tortious. Doane v. Lockwood, 115 Ill. 490, and cases there cited; 2 Morse on Banks, 3d Ed., Sec. 474a; Van Bibber v. Bank of Louisiana, 14 La. Ann. 481; Dodge v. National Exchange Bank, 19 Ohio St. 526.

When a party is intrusted with the goods of another, and transfers them to another without orders, it is a conversion. Syeds v. Hay, 4 Fed. Rep. 260.

If a carrier, by mistake, delivers goods to the wrong person, he is liable in trover. Stevenson v. Hart, 4 Bing. 476.

So with a wharfinger or other bailee.   Deveraux v. Barclay, 2 B. & Ald. 702; Price v. Oswego R. Co., 50 N. Y. 213; Adams v. Blankinstein, 2 Cal. 413; Winslow v. R. Co., 42 Vt. 700.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It is urged that there was not only a sale of the cattle to Bussell, but a delivery also, and that consequently the property in the cattle passed to Bussell, and plaintiffs can not maintain this suit.

The delivery was by an order upon the appellant, the bailee in whose custody the cattle were, to deliver them to Bussell; this order was handed to Fleischman, who was Bussell's agent to buy and ship.

This we think would be a good delivery.   Taxworth v. Moore, 9 Pick. 347; Carter v. Willard, 19 Pick. 1; Burton v. Curyea, 40 Ill. 320; Weber v. Granger, 78 Ill. 230.

It appears that Fleischman, upon receiving the telegram from Bussell, bought in Bussell's name two loads of cattle; one of these, consisting of twenty-three head, he shipped to Bussell and drew a draft upon him for their cost, which draft Bussell paid.   By the purchase of one load, Fleischman's authority to buy was exhausted, and if it appeared that the load shipped to Bussell was purchased before the buying of the load from appellee, it would be clear that Bussell acquired no property in the cattle purchased from appellee.

In the absence of evidence as to which load of cattle was first purchased, and consequently, which load Fleischman had authority to buy, recourse must be had to an examination of the conduct of Fleischman, for the purpose of determining which load it was that he *bona fide* intended in the discharge of his commission to buy for the use and benefit of Bussell.

In buying one or the other of these loads, Fleischman did not intend to buy for Bussell; was not acting for him but for himself, intending to use the cattle for his own fraudulent purposes.

Un. Stock Yd. & T. Co. v. Mallory, Son, etc., Co.

If the cattle purchased from appellee were purchased with a fraudulent intent by Fleischman to apply them to his use, such purpose, not being the carrying out of any order received from Bussell, would, as between Fleischman and Bussell, be a thing by which Bussell would neither be bound nor acquire any property, while appellee might be able, as an innocent party, to hold Bussell to a bargain so made. Appellee, if allowed to recover the purchase price from Bussell, would do so upon the ground that it and Bussell being equally innocent, he having put it in the power of Fleischman to defraud is the one who must suffer, rather than they.

Appellee has not, so far as appears since all the facts became known to it, sought to hold Bussell, but by bringing the present action has acquiesced in his representation of Fleischman's purchase.

Appellant has not acted upon anything that Bussell did; it is immaterial to it whether it respond to Bussell or appellee for the value of these cattle which it delivered upon a forged order; and its insistence that the property in these cattle passed to Bussell, despite the fraud of Fleischman and the repudiation of his acts by both Bussell and Fleischman, is an urgence of an alleged technical transfer between other parties, without its having, as an innocent party, delivered the cattle upon the order of the party whose property it alleges the cattle were.

If the order had not been forged, if appellant had from Bussell authority to deliver, its position would be very different.

The question in this case is not, however, in whom was the ownership and right of possession of these cattle when appellant delivered them to Holmes & Pattison, but in whom was the ownership and right of possession at the time this action was brought. Granting that the sale and delivery by appellee was such as to then vest the property in Bussell, appellee and Bussell could rescind such sale and revest appellee with the ownership of the cattle.

This they did.

Bussell, upon being informed of the purchase by Fleisch-

man, repudiated it as made without authority; and appel-
lee acquiesced in such repudiation by bringing this suit, which
is in disaffirmance of any ownership by Bussell.

Appellant delivered the cattle upon a forged order.
There was no authority from appellee or Bussell to deliver
the cattle to Homes & Pattison. Appellants are therefore
liable to appellee or Bussell for the value of the cattle. No
custom can make valid a delivery upon a forged order.
Bussell, distinctly, before the beginning of this suit, repudi-
ated the sale claimed to have been made to him, and appel-
lee accepted and acquiesced in the position.

The contract and sale between appellee and Bussell, if
any there was, they by mutual consent abandoned.

Contracts may not only be rescinded by mutual consent,
but a rescission may be inferred from the conduct of parties.
Tine v. Rogers, 15 Mo. 315; Wehrli v. Renholdt, 107 Ill.
60; Fletcher v. Cole, 23 Vt. 114; Tomlinson et al. v. Roberts,
25 Conn. 477; Alden v. Thurber, 149 Mass. 271; Parmly v.
Buckley, 103 Ill. 115.

While it is true that to maintain the action of trover the
plaintiff must have had at the time of conversion a complete
property, either general or special, in the property, and
actual possession or a right to immediate possession, yet the
general rule is that by the rescission of a contract each
party is remitted to his original right. Briggs v. Murther,
12 Phila. 179; King v. Price, 2 Chitty, 18 Conn. Law, 416;
18 Am. Ency. of Law, 92.

The plaintiff, by virtue of the rescission and abandonment
by mutual consent of the contract of sale, if any there was,
was remitted to this ownership and right of possession as of
the time of the conversion, the rights of no third persons
having intervened; the ownership and right of possession of
the cattle was thus at the beginning of this action in appel-
lee, and to them appellant must respond.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY, dissenting.

The appellees show that they sold the cattle to Bussell,
through Fleischman.

The telegram by Bussell to Fleischman to buy a load of cattle, being accompanied by no funds, was an authority to buy in accordance with the usual course of business, drawing for the price and commission on Bussell, with bill of lading attached. Hunter v. Gordon, 33 Ill. App. 464.

The delivery order given by the appellee to Fleischman upon the appellant, was a symbolical delivery of the property, having the same effect as an actual delivery of the cattle. Burton v. Curyea, 40 Ill. 320; Webster v. Granger, 78 Ill. 230.

Conceding that the appellant made a wrong delivery and is therefore liable in trover to the owner of the cattle, yet it is not liable to anybody not owner. The appellee must, therefore, to claim as owner, get rid of the sale to Bussell.

That Fleischman was not a general, but special, agent, may be admitted, and also that, as consequence, a purchase by him in excess of his authority, would not bind Bussell, and therefore would not vest the property in him. Not vesting in him it would remain in the appellee. But how is it to be shown that the purchase was in excess of Fleischman's authority? There was his authority, and in appearance he was executing it. But if he has already bought one load of cattle that authority was exhausted, and being but a special agent, whoever dealt with him took the risk. Schilling v. Rosenheim, 30 Ill. App. 81.

But the fact, if it be the fact, that he had already bought one load of cattle, is an affirmative fact to be proved by whomsoever claims any benefit of the fact.

What Fleischman said or did, except in executing his agency, is not evidence for or against either party, and *a fortiori* any inference from his conduct is not to affect either of them.

As the appellee shows nothing to indicate that at the time it sold to Bussell through Fleischman, the authority of the latter had been exhausted, the sale to Bussell is not avoided.

If, then, Bussell was the owner of the cattle at the time of the wrong delivery, no subsequent acts of Bussell or of

the appellee could transfer the right of action which Bussell had, to the appellee. Rescission, or the act to rescind, has nothing to do with the case. The cattle are gone and nobody is following them.