Filed 05/05/25

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00649

| Floyd Kelley et al v. Donald Kelley et al |
| --- |

## FINDINGS, CONCLUSIONS, AND ORDER

This landlord-tenant dispute between plaintiffs Floyd and Shauna Kelley and defendants Donald Kelley and Sarah Carey came before the court for a bench trial on April 3, 2025. Plaintiffs were represented by attorney William Grigas and defendants were pro se. Judgment is entered in favor of plaintiffs as set forth below.

### Findings of Fact

Plaintiffs Floyd and Shauna Kelley are husband and wife. Defendant Donald Kelley is plaintiffs' nephew and defendant Sarah Carey is Donald Kelley's partner. On February 29, 2020, the parties executed a lease for defendants to live on property owned by plaintiffs at 4065 Vermont Route 105 in Newport Center. The term of the lease was for one year beginning April 1, 2020, and the monthly rent was $800. Defendants were responsible under the lease for paying for utilities on the property. The lease provides for automatic renewal on a month-to-month basis unless terminated, which could occur in several ways including by mutual agreement of the parties.

Defendants paid rent under the lease and continued living on the property past the initial one-year term, and in July 2022, the parties executed a purchase contract for defendants to buy the property. That contract provided:

> On this day we enter into an agreement regarding the house, garage and property located at 4065 VT RT 105 in Newport Center, VT.
>
> [Defendants] agree to make a down payment of $20,000 and will pay $800 per month for the next 12 months to begin the purchase process for [the property]. 4% interest will be charged.
>
> [Plaintiffs] agree to replace the garage doors on the garage, replace the door on the basement and clean up the electrical in the basement.
>
> Donald will paint the house, replace 3 windows, replace necessary flooring and will complete the closet in the house.
>
> This will be completed so that he can qualify for conventional mortgage within the 12 month agreement.

Purchase price of the property is $120,000. $20,000 down payment leave a balance of $100,000. After 12 months of $800 payments at 4% interest, will leave a balance of $94,297.00.

If after the 12 months Donald hasn't secured a mortgage, we will reevaluate and recreate an agreement.

Pls.' Exh. 5. Defendants paid the $20,000 down payment pursuant to the purchase contract, and continued making payments of $800 per month, but were unable to secure a mortgage for the remainder of the purchase price within 12 months. Plaintiffs also did not complete the work on the property that was contemplated by the purchase contract within 12 months. Despite their agreement to do so, the parties did not negotiate a new agreement.

The parties dispute whether there was a verbal agreement for defendants to be responsible for maintenance costs, utilities, or pay property taxes during their occupancy, although defendants did pay at least some bills upon plaintiffs' requests. Plaintiffs testified that they spent approximately $5,000 on property tax and utility bills that should have been paid for by defendants. Defendant Donald Kelley also performed a variety of maintenance work on the property while living there. This includes much of the work identified in the purchase contract as his responsibility. Defendant testified he spent approximately $6,000 on maintenance and improvement to the property.

Defendants continued paying $800 per month until November 2023 when a dispute arose about replacing a hot water heater on the property and defendants stopped making payments.

In November and December of 2023, defendants began making complaints about health and safety code violations. A fire safety report from November 2023 indicates several violations including minor electrical issues and a need for smoke and carbon monoxide detectors. Several weeks later, on December 22, 2023, defendants each sent a "Major Code Violations" form to plaintiffs identifying concerns with electrical issues and water damage related to a leak from the roof. These form complaints identified Floyd Kelly as defendants' landlord and threatened withholding of rent, among other tenant remedies provided by Vermont's landlord-tenant statues. Plaintiff Floyd Kelley responded to defendants' concerns either personally or through an electrician he hired, although at times had difficulty coordinating with defendants to access the property to evaluate and make repairs.

On December 28, 2023, plaintiffs, through counsel, notified defendants that their tenancy would be terminated for nonpayment of rent on February 1, 2024, unless defendants paid the $800 per month owed since November 2023. Defendants did not pay as requested, and plaintiffs filed this lawsuit on February 20, 2024. Defendants answered the complaint and filed their counterclaims on March 20.

On June 7, 2024, based on the parties' stipulation, the court issued a rent escrow order requiring defendants to pay $800 per month into court beginning July 1 while the case was

pending. The court thereafter granted plaintiffs' motion to disburse $4,800 of the funds held in escrow.[1] The court is currently holding an additional $3,200 in escrow.

## Conclusions of Law

Plaintiffs seek a writ of possession, payment of back rent since November 2023, unpaid utilities and property taxes, attorney's fees, and costs. Although defendants' counterclaim seeks specific performance under the purchase contract, they did not pursue that remedy at trial. Defendant Donald Kelley stated he did not want anything to do with the property anymore and argued that defendants do not owe plaintiffs anything given the work they performed and expenses they incurred at the property, various habitability issues, and the $20,000 down payment that defendants made under the purchase contract.

Plaintiffs argued at trial that the lease agreement remains in effect and that the purchase contract was essentially an option contract under which defendants paid $20,000 for the option of purchasing the property during a 12-month period. Therefore, the argument goes, defendants have no right to recover or be credited the $20,000 down payment, and the terms of the lease agreement (including a right to recover attorney's fees) remain in effect for the purpose of resolving the parties' dispute.

The court disagrees and concludes that (i) by entering into the purchase contract, the parties terminated the lease agreement; (ii) the purchase contract was a "contract for deed" not an option contract; (iii) the parties later mutually abandoned the purchase contract, and (iii) in the absence of binding contractual language resolving the current dispute, the court must apply equitable principles.

The court concludes that the lease terminated when the parties entered into the purchase contract in July 2022. As noted above, the lease provided for termination by mutual agreement of the parties. When the parties entered into the purchase contract, they agreed to a new arrangement that was fundamentally inconsistent with the original lease agreement. Critically, the parties agreed that defendants would stop making payments to rent the property and start making payments toward the purchase of the property. By so doing, the court concludes the parties mutually agreed to terminate the prior lease agreement.

With respect to plaintiffs' argument that the purchase contract should be considered an option contract, the court looks to the Vermont Supreme Court's explanation of the difference between a "contract for deed" and "lease option to purchase":

> A contract for deed is an agreement in which a prospective purchaser occupies the premises and makes payments until the point of delivery of the deed and execution of the mortgage. Such contracts are bilateral: both parties have duties to which they have already agreed and cannot choose not to perform without breaching the contract.

---

[1] As explained at the time, due to an internal administrative error, this disbursement was erroneously ordered based on the court's mistaken belief that defendants had not opposed the disbursement request.

A second important characteristic of a contract for deed is that the payments under such an agreement are applied to the purchase obligation as they accumulate. Therefore, under a contract for deed, there is an accumulation of an equitable interest in the property that deserves recognition even without the execution of a formal mortgage instrument.

A lease option to purchase, on the other hand, is an agreement by which one binds himself to sell and convey to another party certain property at a stipulated price within a designated time, leaving it in the discretion of such other party to take and pay for the property. It is a unilateral contract: The optionor is bound that the offer shall be kept open and available in accordance with its terms, but its acceptance rests wholly in the discretion of the optionee, and there is no obligation upon the latter with regard to it.

Besides its unilateral nature, the other main way in which a lease option is distinguished from a contract for deed is that the lease payments are not applied on the purchase price. Therefore, no equity is accrued.

*Kellogg v. Shushereba*, 2013 VT 76, ¶ 15, 194 Vt. 446 (quoting *Prue v. Royer,* 2013 VT 12, ¶¶ 21-24, 193 Vt. 267 (cleaned up)). Here, both plaintiffs and defendants had obligations under the purchase contract, and defendants' down payment of $20,000 and monthly payments of $800 were to be applied toward the purchase price of the property. By contrast, "[t]he language that suggests the parties entered into an option agreement is sparse." *Prue*, 2013 VT 12, ¶ 27 (construing agreement as deed for contract based on its terms notwithstanding that parties labeled it as "Lease-Option to Purchase"). Accordingly, the court concludes the purchase contract was a contract for deed and not, as plaintiffs suggest, an option agreement.

The court further concludes, however, that the parties abandoned the purchase contract by failing to perform their obligations thereunder. As discussed above, plaintiffs never completed the promised repairs on the property; defendants never secured financing to purchase the property; the parties failed to negotiate a new arrangement as contemplated when defendants failed to obtain a mortgage after 12 months; in November 2023, defendants stopped making any payments to plaintiffs and thereafter filed complaints that suggested a landlord-tenant relationship; and in February 2024, plaintiffs sued to evict defendants, alleging that the parties had a traditional landlord-tenant relationship. *See Fletcher v. Cole*, 23 Vt. 114, 119 (1850) ("[W]here, by the terms of the contract, concurrent acts are to be performed, as a delivery of the property by one party and a payment of the price by the other, if either party should refuse to perform his part of the contract, the other party would be at liberty to treat it as an abandonment of the contract and justify a rescision of it."); *Preheim v. Ortman,* 331 N.W.2d 62, 64 (S.D. 1983) ("Mutual assent to abandon or rescind a real estate contract can sometimes be evidenced by failure of both parties to take action towards enforcement or performance of the contract." (citing *Wallace v. Johnson,* 234 S.W.2d 49 (Ark. 1950)). The court accordingly concludes the purchase contract terminated in November 2023 when the parties' relationship broke down and defendants stopped making payments to plaintiffs.

Moreover, there was no subsequent written agreement regarding defendants' occupancy of the property, and the evidence introduced at the hearing does not support a finding that the

parties subsequently agreed to revert to the original lease agreement or reached a new verbal rental agreement.

Under the circumstances—specifically, the absence of binding rental agreement—the court concludes that this case should be "properly viewed as a common law action for ejectment governed by 12 V.S.A. § 4761, with such 'damages' as would be due under 12 V.S.A. § 4765," as "measured by the rental value of the premises" and any other "gains prevented" or "losses sustained." *Kellogg*, 2013 VT 76, ¶ 23 (quoting *Sabourin v. Woish,* 117 Vt. 94, 99 (1952)). In determining an appropriate damages award in this context, the court is guided by general equitable principles including principles of unjust enrichment. *See id.* ¶¶ 22-24.

The court further concludes that plaintiffs are lawful owners of the property, that defendants have failed to purchase the property as contemplated by the purchase contract and otherwise have no right to continue in possession of the property, and that accordingly, plaintiffs are entitled to possession of the property. 12 V.S.A. §§ 4761, 4854.

With respect to damages, as noted above, plaintiffs are entitled to the reasonable rental value of the premises. In the absence of contradictory evidence, the court will determine the rental value as $800 per month plus utilities, as set forth in the original lease, along with property taxes from the date of the purchase agreement.[2] Defendants have occupied the property since November 2023—or 17 months (including May 2025)—without making payments. Plaintiffs are accordingly entitled to $13,600 for defendants' occupancy during this period. Plaintiff Floyd Kelley also testified without contradiction that plaintiffs paid $5,000 on utilities and tax bills on the property during this period. This amount will also be included in the damages calculation.

Defendants argued at trial that, in determining any damages award, the court should credit them for their $20,0000 down payment toward the purchase price and for $6,000 in expenses incurred to maintain the property. Although defendants did not file a counterclaim and thus cannot affirmatively recover any damages in this case, these payments are potentially relevant to whether and to what extent equity requires a damages award to plaintiffs. *See Kellogg*, 2013 VT 76, ¶ 22 (applying unjust enrichment principles and considering totality of circumstances to determine plaintiff's recovery).

In Vermont, unlike most other states, payments made under an enforceable contract for deed create an equitable mortgage interest in the property. *Prue*, 2013 VT 12, ¶ 41; *Tromblay v. Dacres*, 135 Vt. 335, 339-40 (1977). But that interest can be abandoned. *Prue*, 2013 VT 12, ¶ 44. "A finding of abandonment depends upon the intentions of the parties," considering "all of the facts and circumstances" and focusing "on the intent of the purchasers." *Prue*, 2013 VT 12, ¶ 44 (quotation omitted). The record here does not support a finding that defendants abandoned their equity interest. Defendants remained on the property, and although they stopped making payments because of a dispute over repairs, they continued to assert a right to their equity in the

---

[2] Although the parties disagree about whether there was an agreement with respect to maintenance, utility, and tax costs, there appears to be no dispute that these expenses were not considered covered by the $800 per month payments, at least not as of July 2022 when the purchase contract was executed.

property, including at trial. *See Prue*, 2-13 VT 12, ¶ 43-46. Accordingly, the court will consider defendants' $20,000 down payment in determining plaintiffs' damages.[3]

The court will also consider, however, the extent that defendants' payments during the pendency of the purchase contract included interest payments. Interest is the cost of borrowing money. Plaintiffs, in effect, provided defendants with an equitable mortgage—*i.e.*, a loan—when they executed the purchase contract and agreed to terms under which defendants would occupy the property and make payments toward its purchase. The purchase contract provided for 4% interest on a $120,000 purchase price, which amounts to $4,800 per year or $400 per month. As noted above, the purchase contract was in effect from August 2022 through October 2023, or 14 months. The court thus concludes that defendants are entitled to $5,600 in interest payments on account of their having, in effect, provided defendants with a mortgage loan during this period.

With respect to defendants' claimed expenses to maintain and improve the property, the evidence does not support including these amounts in the damages calculation. The court is unable to determine from the evidence presented the extent to which these expenses were incurred for routine maintenance, which under the circumstances of a contract for deed should be borne by the defendants as prospective purchasers occupying the property, or the extent that these expenses were for genuine improvements to the property that can fairly be considered as having provided a benefit to the plaintiffs upon returning possession of property to them. If, however, defendants have purchased materials or supplies that have not yet been used on the property, they shall be entitled to retain those materials or supplies.

In light of the above, the court finds that plaintiffs are entitled to $13,600 for defendants' occupancy of the property since November 2023, $5,000 in utility and property tax payments, and $5,600 in interest payments, for a total of $24,200. Defendants, however, are entitled to a credit of $20,000 on account of the down payment they made toward the purchase price, which reduces plaintiffs' damages award to $4,200. As the prevailing party, plaintiffs are also entitled to their court costs, including a $295 filing fee and sheriff fees of $158.34, for a total of $453.34. Plaintiffs are not entitled to recover attorney fees because, as explained above, their written rental agreement is no longer in effect. *See* 12 V.S.A. § 4854.

Plaintiffs are accordingly entitled to judgment in the amount of $4,653.34. Because the court has already disbursed $4,800 of the funds held in escrow to plaintiffs, plaintiffs are ordered to return $146.66 to defendants. The remaining funds held in escrow shall be disbursed to defendants.

## Order

The clerk shall issue a writ of possession restoring plaintiffs to possession of the property at 4065 Vermont Route 105 in Newport Center.

---

[3] The Vermont Supreme Court in *Kellogg* held that payments toward a purchase under a contract for deed were generally not recoverable if the contract was unenforceable under the State of Frauds. *See* 2013 VT 76, ¶¶ 28-40. The contract here was in writing and neither party has argued it was unenforceable.

Because the rent escrow funds already disbursed to plaintiffs exceed the amount of the judgment in this case, plaintiffs are ordered return $146.66 of the disbursed funds to defendants.

The clerk shall disburse the remaining funds held in escrow to defendants.

Electronically signed on: 5/1/2025 pursuant to V.R.E.F. 9(d)

_____

Benjamin D. Battles
Superior Court Judge