Tomlinson and another *v.* Roberts.

TOMLINSON AND ANOTHER *VS.* ROBERTS.

A. sold and delivered a horse to B., and took his note for the price, soon after which, by mutual consent, the contract of sale was annulled, the horse delivered back to A., and the notes given up to B. It was then agreed that B. should have the horse at the same price, provided he paid the amount within sixty days, for which he was to give his note, the horse to remain the property of A. until the note was paid, and to be kept in his stable, but used by B. at pleasure, he paying a fixed rate per week for such use. Before the note fell due, B. absconded, having first disposed of the horse to C. A., immediately on learning the fact, demanded the horse, giving notice of the facts to C., and on his refusal to deliver him up, brought an action of trover. Held, 1. That

Tomlinson and another *v.* Roberts.

the cancelation of the contract of sale and the return of the notes, was as effectual to revest the title in A. as between the parties, as the most formal reconveyance would have been; and that the resumption of possession by A. made his title good against creditors and *bona fide* purchasers. 2. That after A. became thus completely revested with the title, it was as competent for him to contract with B. for the letting of the horse, as with any other person, and that B's possession under such letting was not fraudulent as the possession of a vendor. 3. That the new arrangement, regarded independently of the previous transactions, the jury having found, under the charge of the court, that the agreement to sell was executory, was not to be considered as in legal effect a sale and mortgage back, so as to make B's possession fraudulent, but as a mere agreement for a future sale.

The court having charged the jury that if they should find that the new arrangement had any connection with the prior purchase, or that the contract of sale was abandoned in contemplation of the new arrangement, then such arrangement was in effect a mere mortgage of the horse to A. as security for the price, and as a mortgage subject to the ordinary rule forbidding the retention of possession by the mortgagor,—it was held, on the defendant's motion for a new trial, that such instruction was correct.

TROVER for a horse; tried to the jury on the general issue at the superior court in Fairfield county, December term, 1856.

On the trial, the plaintiffs offered evidence to show that about the 1st of December, 1853, one William E. Roberts proposed to purchase the horse of them on credit, but being unwilling to trust him, they agreed that he might have him for $150, provided he paid $75 in sixty days, and the remainder in ninety days, and that the said William should give his notes accordingly, and that the horse should not become his until the notes were paid, and in the mean time should be kept at the plaintiffs' stable, but might be used by the said William at his pleasure in his business about the town of Bridgeport, where both parties resided, at the price of $3 per week; that the notes were thereupon given by the said William; that in eight or ten days thereafter, the notes not being paid, the said William absconded and had never returned; and on leaving disposed of whatever property he had to the defendant, and with the rest delivered the horse in question to the defendant, under a sale, which the plaintiffs claimed to be merely colorable. They further offered evidence that immediately upon learning the disposition that

Tomlinson and another *v.* Roberts.

had been made of the horse, they communicated the facts to the defendant, and demanded of him the return of the horse, which the defendant refused to deliver, claiming title to him under the sale from said William.

The defendant offered evidence that prior to the above arrangement, about the 25th of November of the same year, the said William bought the horse of the plaintiffs, and gave his notes therefor, and took him into his possession, and kept him several days; that afterward the plaintiffs, being dissatisfied with the said William's credit, proposed that the notes should be given up, and the arrangement of the 1st of December be made; and that after that arrangement the horse continued as before in the possession of the said William, and was in his possession when purchased of him by the defendant, and that he purchased him in good faith, and for a valuable consideration; and the defendant requested the court to charge the jury that upon the foregoing facts the plaintiffs were not entitled to recover, 1st, because the possession of the horse by the said William, under the circumstances, was fraudulent as against the defendant, a *bona fide* purchaser; and 2dly, because the arrangement gave to said William a right of possession in the horse, which was not terminated by the sale to the defendant, and which, if it could be terminated at all before the notes fell due, could be so only upon a demand on the said William.

The plaintiffs claimed, and offered evidence to prove, that the sale of the 25th of November, was wholly canceled and abandoned prior to the arrangement of the 1st of December; that in pursuance of such abandonment the horse had been delivered to the plaintiffs and was in their possession; and that the latter arrangement was wholly unconnected with the prior sale and not commenced until a subsequent day. They also claimed that the sale by the said William to the defendant was a violation and repudiation of the contract of December 1st, that the notes were unpaid, and were held by them ready to be delivered up, and that the said William being out of the state, they were not bound to follow him to make demand for the horse.

The defendant further requested the court to charge the jury, that if the said William had been the owner of the horse, and had it in his possession under the original purchase, then even although the contract had been canceled, yet the rules of law would not allow the possession to pass into the hands of the said William, under the agreement of the 1st of December, and that such possession ought to be regarded as fraudulent against a *bona fide* purchaser; and that independently of any such purchase, upon the arrangement of the 1st of December itself, the possession of the horse by the said William ought to be deemed fraudulent against the defendant. The court charged the jury as follows:

1st. Upon the arrangement of the 1st of December, considered by itself, if the jury find that that arrangement was an executory agreement for the sale of the horse upon a future day, then the plaintiffs might allow the possession of the horse to pass into the hands of William E. Roberts, under the agreement for his use, and the said William will not be regarded as a mortgagor of personal property, remaining in possession of the property within the ordinary rule of law, declaring such possession fraudulent. [The court here remarked, that this instruction was given on the authority of the case of *Forbes* v. *Marsh*, 15 Conn., 384, which had been read in the argument, but that the principle adopted in that case was not meant to be in the least extended, except that whereas the question arose there between the plaintiff and an attaching creditor, and here between the plaintiffs and a purchaser, the court intended that a purchaser should be put on the same footing as a creditor; that the contract there was regarded as an executory agreement for a sale, and not an executed conditional sale.] And if the jury find, from all the evidence, that the sale was executed and the agreement in substance a mere mortgage back of the property to the plaintiffs, then the possession of said William ought to be regarded as evidence of fraud; but if the agreement is executory, the law does not pronounce his possession fraudulent; and the fact that notes were given, although an important item of evidence in favor of

Tomlinson and another *v.* Roberts.

the claim that the contract was executed, is not conclusive; and if the agreement is executory, the plaintiffs' title, so far as this question is concerned, is good against the defendant, even if you find that the defendant is a *bona fide* purchaser for value.

2d. If it be true, as claimed by the defendant, that prior to the 1st of December, the said William had bought the horse of the plaintiffs, and had taken him into his possession, and if the arrangement of the 1st of December had any connection with the prior purchase, or if the giving up of the prior purchase was made in contemplation of substituting the new arrangement in its place, then the latter arrangement may properly be regarded as a mere mortgage, subject to the ordinary rule forbidding the retention of possession by the mortgagor; but if it be true, as claimed by the plaintiffs, that the prior sale had been in good faith canceled and ended, and the negotiation of the 1st of December was unconnected with it, and on a subsequent day, then such prior sale may be laid out of the case, and the questions of law, with respect to the effect of the possession of the horse by the said William, and of the new arrangement, are left as if no such prior sale had been made.

3d. The plaintiffs can not recover in this action, unless they were entitled to the immediate possession of the horse at the time of the alleged conversion of it by the defendant; but if the said William had absconded and sold the horse, as claimed by the plaintiffs, no demand upon him was necessary to enable the plaintiffs to maintain their action, or to revest in them any right of possession which they may have parted with under the arrangement of December 1st. And if, as is not controverted, the sale by the said William to the defendant was an absolute sale of the horse, and not a sale of the right of using him, and if the property was demanded of the defendant, and he was then informed of the facts in the case; and if, upon such demand, he refused to deliver up the property, claiming to hold it as his own under the purchase, and making no claim to a right of using it, then the jury may properly find that the said William aban-

doned the contract of December 1st, and had been guilty of a conversion of the property to his own use, and that the subsequent refusal of the defendant to deliver the horse to the plaintiffs under the circumstances of the case, was a conversion for which the plaintiffs might recover.

The jury having returned a verdict for the plaintiffs, the defendant moved for a new trial for a misdirection.

*Hawley* and *Sturges*, in support of the motion.

1. The possession of the horse by William E. Roberts, was evidence of a fraudulent arrangement as against the defendant, considered independently of the sale of the 25th of November. The horse was delivered to and used by him as his own, his notes given for the price, and nothing further remained to be done to vest a complete title in him, except to pay the notes when they fell due. This made it a conditional sale. 1 Seld., 41. 36 Maine, 562. The case of *Forbes* v. *Marsh*, referred to by the judge in his charge, differed essentially from this. *Dyer* v. *Pierson*, 3 B. & C., 38. (10 E. C. L., 13.)

2. The mere cancelation of the contract of sale of the 25th of November, could not operate to revest the property in the plaintiffs. The title had by the sale become vested in Roberts. The same delivery, accompanied with continued possession by the purchaser, was necessary as in the original sale. Chitt. on Cont., 5th Am. ed., 743, note. *Chipman* v. *Searle*, 3 Pick., 38. *Stevenson* v. *Wilkinson*, 3 B. & A., 320. (22 E. C. L., 86.) This doctrine is applicable to land and chattels. *Botsford* v. *Morehouse*, 4 Conn., 550. *Gilbert* v. *Bulkeley*, 5 Conn., 262. *Rayner* v. *Wilson*, 6 Hill, 469. *Chessman* v. *Whittemore*, 23 Pick., 231. *Arnold* v. *Delano*, 4 Cush., 33. *Barnes* v. *Freiland*, 6 T. R., 80. *Neate* v. *Ball*, 2 East, 117. *Richardson* v. *Goss*, 3 B. & P., 119.

3. The retention of possession by Roberts after the resale, was fraudulent as against the defendant, who was a *bona fide* purchaser. This would be clearly so as to a creditor, under the statute against fraudulent conveyances, and the

common law gives the same protection to purchasers. *Kimball* v. *Hutchins*, 3 Conn., 450. *Rew* v. *Barber*, 3 Cow., 272. *Cadogan* v. *Kennett*, 1 Cowp., 432. Twyne's Case, 3 Coke, 81. *Gibson* v. *Love*, 4 Florida, 217. *Sanders* v. *Pepoon*, 4 ib., 465. *Wooten* v. *Clark*, 23 Miss., 75. *Griswold* v. *Sheldon*, 4 Comst., 581. *Stoddard* v. *Butler*, 20 Wend., 507. *Wood* v. *Lowry*, 17 ib., 492. 1 Sw. Dig., 284. *Rhines* v. *Phelps*, 3 Gilman, (Ill.,) 455. *Patten* v. *Smith*, 5 Conn., 196. *Swift* v. *Thompson*, 9 Conn., 63.

*Loomis* and *Beardsley*, against the motion.

1. The arrangement of December 1st, was one which the parties had a right to make, and was not in its nature fraudulent in respect to the defendant. *Forbes* v. *Marsh*, 15 Conn., 384, and cases therein cited. This case is not distinguishable from that, except that the defendant here justifies as a subsequent purchaser without notice, while in that case the defendant was an attaching creditor.

2. The case is not affected by the sale made on the 25th of November. 1st. Upon the cancelation of that sale the possession of the horse was resumed by the plaintiffs, and continued in them until a subsequent day. This is all that would be necessary if they were then original purchasers of the property. 1 Sw. Dig., 267. *Talcott* v. *Wilcox*, 9 Conn., 134, 140. *Bishop* v. *Warner*, 19 Conn., 460. The language in the books is, that the "continued possession" of the vendor is fraudulent. But here was no continued possession of Wm. E. Roberts, supposing him to be the vendor. 2d. But this cancelation of the sale was not in its nature a resale of the horse by W. E. Roberts to the plaintiffs, nor attended with the same legal consequences.

3. No demand upon W. E. Roberts was necessary. *Ashmead* v. *Kellogg*, 23 Conn., 70. *Fenn* v. *Bittleston*, 8 Eng. L. & Eq., 483, and cases cited. *Houston* v. *Dysche*, 1 Meigs, (Tenn.,) 76.

STORRS, C. J. The cases of *Forbes* v. *Marsh*, (15 Conn. 384,) and *Hart et al.* v. *Carpenter*, (24 Conn., 427,) are deci-

sive to show that the court below was correct in charging the jury, that if the arrangement of December, 1853, between the plaintiffs and William E. Roberts, is considered by itself, and independently of the previous arrangement between them in November, and it was, as claimed by the plaintiffs, an executory agreement for the sale by the plaintiffs to said William of the horse in question upon a future day, that it should be kept by the plaintiffs, and that the said William might, until then, use it at his pleasure in his business at a particular price for such use, it was not to be regarded as an immediate sale of the horse to said William and a mortgage back to the plaintiffs for the sum at which it was agreed to be sold, and that the possession of said William would not be regarded as evidence of fraud, as against his creditors, or the defendant, although the latter might be a *bona fide* purchaser from him, within the ordinary principle declaring the retention of the possession of personal property by the vendor or mortgagor to be fraudulent. Such a contract would not constitute a sale of the property, either absolute or conditional, to said William; and therefore would not divest the plaintiffs of their title to it; it would be only an executory agreement for the sale of it at a future day, with a stipulation that said William might use it, as he had occasion, in the mean time; and if that stipulation would amount even to a bailment for that time, it is scarcely necessary to say that the possession of the bailee would furnish no evidence of fraud in the contract of bailment. Much less would it furnish such evidence, if it fell short of such a contract. The other part of the charge on this point was favorable to the defendant, and was also plainly correct.

We are of the opinion that the defendant has no reason to complain of the manner in which the questions arising on the claims of the parties, in regard to the agreement between the plaintiffs and the said William, prior to the arrangement of December, were disposed of by the court below. As no particular formalities were requisite to the re-transfer of the property, the agreement claimed by the plaintiffs to have been made between them before that arrangement, and uncon-

Tomlinson and another *v.* Roberts.

nected with it, that the previous sale by the plaintiffs to said William should be canceled or rescinded, and that the notes given by the latter on that sale should be given up to him, was as valid and effectual to revest the title to the property in the plaintiffs, as the most formal reconveyance to them would have been ; and if the possession of it was resumed by them, it was a good reconveyance of it as against the creditors of William or a purchaser from him, although in good faith. And after the plaintiffs became thus completely revested with the title to it, we can not perceive why it was not as competent for them to contract with the former vendee for the letting or bailment of it to him as to any other person, or why the principle respecting the retention of the possession of property by a vendor, would be any more applicable in the one case than in the other. If the change of possession was not *bona fide,* but merely colorable, it would present a different question, and the previous relations of the parties would render it more open to observation on such a question ; but here the jury have found that it was done in good faith. And it appears that the defendant, on that question, had the fullest benefit of that circumstance ; for the court instructed the jury very favorably for the defendant, that if the arrangement of the 1st of December had any connection with the prior purchase, or if that purchase was given up in contemplation of substituting that arrangement in its place, then the latter arrangement might properly be regarded as a mortgage only, subject to the ordinary rule forbidding the retention of possession by the mortgagor.

The charge below being in accordance with the views we have expressed, a new trial is not advised.

In this opinion the other judges, HINMAN and ELLSWORTH, concurred.

New trial not advised.