# CHARLESTON.

Scott & Callaway *v.* Dixie Ins. Co.

Submitted June 10, 1910.   Decided March 19, 1912.

1. Executors and Administrators—*Actions on Policies—Parties—Joinder of Plaintiffs.*

    A partnership is composed of several members. One dies, but the partnership is not closed, and the share or assets of the decedent is not withdrawn, but the firm business goes on in the firm name as before, his administrator acting as a copartner. In this state of things a fire insurance policy, after such death of a member, is issued in the name of the firm insuring a house belonging to it, though the legal title is in the members as individuals. The administrator may join the other members in a suit in the names of all as partners on the policy to recover the loss from destruction of the house by fire. It is no misjoinder of plaintiffs. (p. 534).

2. Insurance—*Avoidance—Ownership of Property.*

    A lot of land is conveyed to a number of persons in their individual names, but with intention to be used in the business of a partnership, and by them put into the partnership business and used in it, the firm in possession of and using the lot and house on it in its business. One of the partners dies, his share of the naked legal title being in his heirs. After his death the house is insured against loss by fire in the name of

the firm. There is here no violation of a clause in the policy that "if the interests of the assured in the property be not truly stated herein" * * or "if the interests of the assured be other than unconditional and sole ownership," the policy shall be void. And the firm has an insurable interest. (p. 535).

3. SAME—*"Insurable Interest"—Partnership Real Estate.*

   Real estate acquired for partnership with partnership means and used in its business gives the partnership an insurable interest to warrant a policy insuring it against loss by fire. (p. 535).

4. SAME—*Insurable Interest—Equitable Title.*

   An equitable title to real estate gives an insurable interest to warrant a policy in the name of its owner insuring it against loss by fire. (p. 536).

5. SAME—*Proofs of Loss—Waiver—Denial of Liability.*

   Denial by an insurance company of liability, on other grounds, within the time allowed for furnishing preliminary proofs of loss, is in law a waiver of the conditions of the policy requiring such proof. (p. 538).

Error to Circuit Court, Fayette County.

Action by L. P. Scott and others, partners, against the Dixie Fire Insurance Company. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*Payne & Hamilton,* for plaintiff in error.

*Dillon & Nuckolls,* for defendants in error.

BRANNON, JUDGE:

Dixie Fire Insurance Company issued an insurance policy to Scott & Calloway insuring a house. The house being destroyed by fire, an action was brought against that company in the names as plaintiffs of L. P. Scott, J. B. Calloway, A. B. Ellis, S. S. Boyd, Shedrick Hughes in his own right, and as administrator of Randolph Hughes, deceased, as partners in the name of Scott & Calloway, and a judgment having been rendered on a verdict for the plaintiff for $1050.00, the company obtained a writ of error.

As one point of error it is claimed that there could be no recovery because of a misjoinder of plaintiffs. Here it is said

that the administrator cannot join with the other parties, and there could be no joint recovery. The facts are that the property was conveyed by one Smith to Scott, Calloway and a number of others as individuals, the deed not indicating any partnership, but intended for such use. On its conveyance the grantees formed a partnership under the name of Thompson and Scott to carry on the liquor business, using the house in such business and treating the house as partnership property. By subsequent conveyance the house came to be owned in the name of Scott, Calloway, Boyd, Ellis, Shedrick Hughes and heirs of Randolph Hughes. Such was the title when the policy of insurance issued. The partnership name was changed from Thompson & Scott to Scott & Calloway. The house was occupied and used in the partnership business of Scott & Calloway when the policy issued to them in that name. The property was, so far as legal title is concerned, in the name as individuals of plaintiffs Scott, Calloway, Ellis, Boyd, Shedrick Hughes and heirs of Randolph Hughes. Before the policy issued Randolph Hughes had died, and Shedrick Hughes, as his administrator, still participated in the business, and it was carried on with him as a partner individually and as administrator.

Realty purchased with partnership assets for partnership purposes, though deeded to individuals, is partnership property, and is personal property as to creditors and between partners. *Davis* v. *Christian,* 15 Grat. 11; *Brook* v. *Washington,* 8 Grat. 248; *Pierce* v. *Trigg,* 10 Leigh 406. As held in *Miller* v. *Ferguson,* 107 Va., p. 251, it is to every intent considered personal property, not only as between the partners and their creditors, but also between the survivors and the representatives of the deceased.

It is so far personalty that a widow of a partner cannot have dower in the realty itself. *Parish* v. *Parish,* 88 Va. 529.

I admit this is the rule in the court of equity, not law, and I do not say that such consideration alone would call for recovery; but I introduce that view to say that, though not technically at law the property of the firm, yet in equity it is and that furnished right to the firm to take insurance in its name. In equity partnership property, and in actual possession of the firm, the individuals holding title only for the firm

as a dry trustee holds for a *cestui que trust* in possession. The company chose to issue the policy thus, and it cannot raise this question, which at best is one between the other parties. We cannot say the title was misrepresented, as the firm was substantial owner. It had substantial interest to be injured by the burning of the house. "Whoever may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject of insurance, whether that advantage inures to him personally or as representative of rights of others, has insurable interest." Hogg's Pl. & Forms, sec. 29.

If this firm had care and custody of the property for those holding legal title, though not expressed in the policy, it has an insurable interest. "In general to give a party an insurable interest it is not necessary that he have actual right of property, legal or equitable, in the subject insured, but it is sufficient, if he or those whom he represents will suffer any sort of loss by its destruction." *Sheppard* v. *Peabody Co.,* 21 W. Va. 368. There it was held that an administrator has an insurable interest in realty, if the personalty is not sufficient to pay debts. If we regard this firm as owner, of course, it has an interest; but say that the title is in individuals.

Then those individuals are trustees, holding for the firm, then the full equity is in the firm, and it is well settled that the owner of the equitable title may insure in his name. Cooley's Briefs on Insurance, vol. 1, 150, citing *Columbian Ins. Co.* v. *Insurance Co.,* 2 Peters 25, 7 L. ed. 335, and many other cases. This consideration clearly justifies insurance and recovery in the name of the firm. Moreover, it is seen in Cooley's Briefs on Ins., vol. 1, 151, that "possession, though without title, is sufficient to give the possessor an insurable interest. And where the possession is complete with a beneficial use, the possessor has an insurable interest."

"The interest one must have in the property insured, in order to give him an insurable interest, need be only slight and contingent." 1 Cooley's Briefs on Insurance, 149. I stop to ask, How can the insurance company raise a question on this ground? If the firm had to account to the holder of the legal title, payment by it to the firm would be good. But it is owner. Its members own.

I have been considering the case as if the policy issued in Randolph Hughes' life. This being a money demand, the administrator could unite with the others in suit. In *Clarkson* v. *Booth,* 17 Grat. 490, it s held that where one of several tenants in common owned a slave and one died, his administrator must join in an action to recover the slave. The policy issued after his death. His administrator, as a matter of fact, continued his assets in the business, and while he was a partner the insurance was taken out. Here is a contract with the firm, the administrator a member, a contract with him. A mere money demand comes from it. He as administrator has an interest. Under those facts it is much plainer that the administrator could join. Legal title to the money was in him jointly with others.

Again, if the administrator is not a proper party, as the right would be in the survivors, would not his presence be treated as surplusage? *Goshorn* v. *County Court,* 42 W. Va. 735. So, I conclude there was no misjoinder.

I opine that the defence most relied upon is a falsity under that clause of the policy saying that "if the interest of the insured in the property be not truthfully stated herein * * * or if the interests of the insured be other than unconditional and sole ownership," the policy should be void. What is said above will largely apply under this head, to show that the firm had insurable interests, equitable title, was real owner in possession. This clause "is held to refer to character and quality of title—to the actual and substantial ownership, rather than the strictly legal title; in other words, the insured interest must be such that he would sustain the whole loss if the property is destroyed." Who but the firm would in this case? "If the insured has an equitable title, it is a sufficient compliance with the condition requiring sale and unconditional ownership in the insured." 2 Cooley's Briefs on Insurance, 1367. One in possession under oral contract of sale surely could insure, though he has no title or color of legal title. I have above shown that the firm was full equitable owner. Moreover, the agent who took the policy knew the state of title. No false statement as to title was made. There were no questions asked, no statement made; and if the insured had stated that right to the property was in

the firm, it would have been true under the law of insurance, for reasons above given.

The policy contains a clause that loss should not be payable until 60 days after notice and proof of loss. No proof of loss was made; but it was waived. Soon after the loss an adjuster examined the place of the fire, took measurements and obtained full information. No objection made as to the fact or extent of loss. The adjuster made objection only on the ground that plaintiffs were not sole owners, and admitted that the loss was greater than the amount of the insurance. He referred the matter to the general agent, who wrote stating that the company resisted payment because the true ownership had not been stated in the policy. This was within sixty days. He did not demand proof of loss, or allege that as a ground of non payment. This was a waiver of that defence. *Medley* v. *German Ins. Co.,* 55 W. Va. 342; *Morris* v. *Dutchess Co.,* 67 W. Va. 368. If a company refuse pay upon independent ground, before proof of loss is made, and before the time within which proof is to be made, such denial is a waiver of proof. After such denial of liability, suit could be brought at once; but was not brought before five months after the fire.

We see no just defence to the insurance claim, no reason why the company should not make its policy good.

Judgment affirmed.

*Affirmed.*