## STATE MUT. INS. CO. v. GREEN.

No. 4868—Opinion Filed Dec. 21, 1915.

Rehearing Denied Jan. 23, 1917.

(166 Pac. 105.)

1. **Insurance—Fire Policy—Title to Property —Knowledge of Agent—Imputation to Insurer.**

In the absence of fraud on the part of the insured, disclosures as to actual status of title to insured property made by the insured or the agent of the insured to a soliciting agent of a fire insurance company at the time of the taking of the application for a policy, said insurance agent filling out date of said application blank, presenting the same to insured and procuring her signature thereto, collecting the premium for said insurance policy, and acting at all times within the scope of his authority, are knowledge which by law will be imputed to the fire insurance company issuing the policy.

2. **Same—Estoppel of Insurer.**

Where a soliciting agent of a fire insurance company is fully informed of the status of title to lots upon which the property to be insured stands, and in the usual course of his duties as such agent prepares an application for a policy of insurance upon such property in the name of the wife, the record title thereto being in the husband, the said property being the homestead of the insured and her husband, and the agent of the insurance company being fully informed of all these facts prior to and at the time of the taking of the application, held, that the insurance company is estopped to defend, in an action on the policy, on the ground that said application, in stating that the title to said property was in the wife, contained a material misrepresentation.

3. **Insurance — Insurable Interest — Homestead.**

Where the record title to the homestead is in the husband, the wife residing with him and occupying the property as the homestead of them both, the wife has an insurable interest in the buildings situated thereon.

4. **Insurance—Fire Insurance—Irregularities in Application—Waiver.**

A fire insurance company, by retaining the unearned premium on the policy with knowledge of the irregularities and misrepresentations in the application for insurance, thereby waived such irregularities and misrepresentations.

5. **Same—Notice of Loss—Waiver.**

Insured property having been destroyed by fire, and the company receiving notice thereof by telegram from the insured the same day the fire occurred and promptly sending its agents to investigate the extent of the loss and such agents performing that duty, held, the company thereby waived notice of loss required under the terms of said policy.

**6. Same—Proofs of Loss—Waiver.**

Where the insured property was destroyed by fire, the company being notified thereof by the insured on the day the fire occurred, and within three days thereafter sending its agents to investigate the extent of the loss and the circumstances thereof, the insured notifying the company by letter within three days after such fire that the property was "a total loss," "cause unknown," giving the number of the policy, and thereafter the agents of said company, after investigating the circumstances of the fire and the extent of loss, reported the same to the company, and the said company agrees with the insured as to the amount of loss under the policy, and makes no objection to the sufficiency of the proofs of loss so rendered by the insured, but retains the statements and agreements so furnished without objection until after the 60-day limitation for filing proofs of loss as provided in the policy has expired, no demand for additional proof of loss having been made by said company—held, that the company waived the proof of loss requirement in the policy notwithstanding the execution of the general nonwaiver agreement.

**7. Witnesses—Competency—Husband Acting as Agent for Wife.**

Where the record shows that the husband was acting for the wife's best interest and for the protection of her interest in the homestead, and, with knowledge of his acts in her behalf, the wife ratifies the same and accepts the benefits thereof, the trial court properly held that the husband was acting as agent for the wife in such transaction, and he was competent to testify in regard thereto.

**8. Insurance—Fire Insurance—Description of Property—Reformation.**

Where the proof shows conclusively that there was a mutual mistake of fact, in that the insurance policy sued on contained a misdescription of the insured property by giving its location on block 5, while in truth and in fact it was situated on block 51, the court committed no error in reforming the policy to express the real intention of the parties.

**9. Action—Joinder of Actions.**

Where the proof conclusively shows a mutual mistake of fact regarding the description of the block upon which the insured property stands, the cause of action for reformation of said policy was properly joined with an action to recover the amount due under the terms of said policy; the property mentioned having been totally destroyed by fire.

**10. Insurance—Fire Insurance—Provisions of Policy—Waiver.**

Where the insurance company sends its agent or agents to investigate the circumstances and extent of loss by fire under their policy of insurance, and such agent or agents enter into a nonwaiver agreement with the insured before entering upon the discharge of their duties, held, that the actions and conduct of such agent or agents while acting under the authority of the nonwaiver agreement do not constitute a waiver of a compliance with the requirements of the insurance policy on the part of the insured.

(Syllabus by Crow, C.)

Error from District Court, Alfalfa County; Jas. B. Cullison, Judge.

Action by M. O. Green against State Mutual Insurance Company. Judgment for the plaintiff, and defendant brings error. Affirmed.

Parker & Simons, for plaintiff in error.

Geo. W. Partridge, for defendant in error.

Opinion by CROW, C. This is an action on a fire insurance policy commenced in the court below by the defendant in error, M. O. Green, hereinafter referred to as plaintiff, against plaintiff in error, State Mutual Insurance Company, a corporation, hereinafter referred to as defendant, according to their respective positions in the trial court.

In the month of February, 1911, the plaintiff and her husband, Antonio Green, were occupying as a home a dwelling house situated upon lots 10, 11, 12, 13, 14, and 15 in block 51 in the town of Jet, Alfalfa county, Okla. On or about the 25th day of February of said year one L. F. Labrue, a soliciting agent for the defendant insurance company, came to the home of the plaintiff and made inquiries as to whether or not said property was insured against fire. After conversation with the husband of the plaintiff it developed that a policy of insurance upon the property had recently expired, and that there was none covering the property at that time. The said Labrue then solicited the plaintiff's husband to take out a policy in the company which he was representing, and after some further conversation between the husband and the said agent it was agreed that the property should be insured with the State Mutual Insurance Company. Thereupon the plaintiff's husband, Antonio Green, informed the said agent that the record title to the property about to be insured was in him, but he asked the agent, "Why cannot I have this policy made to my wife?" "Why," he (the agent) says, "You can." Plaintiff's husband then stated to the said agent, "She (the plaintiff) has paid part for the lots and bought the furniture in it, and she paid part of the money, she has paid most of the expenses, and I think she is entitled to the policy. I will have the insurance made to her provided it doesn't make any difference to you," and he (Labrue) said, "It doesn't make one bit of difference." The record then shows that the insurance agent proceeded to prepare the ap-

plication for a policy of fire insurance on the property above described, filling in the answers to questions therein contained, and presenting the same to the plaintiff, Mrs. Green, for her signature. Antonio Green then called in his wife, the plaintiff, and her signature was affixed to the application for insurance. The agent then collected from Antonio Green the premium on the policy applied for, amounting to $15 in cash and his note for $25 due August 1, 1911. In due time the policy here sued on was issued, by the terms of which the defendant insured the house and its contents against loss by fire or lightning for the term of five years commencing February 25, 1911. Thereafter, on July 4. 1911, the insured property was totally destroyed by fire, of which fact the defendant was notified by telegram from the insured on the day the fire occurred. The following letter was also mailed to the defendant company on the day of the fire and duly received by them, reading as follows:

"Gentlemen: I have today sustained the total loss of dwelling and contents. Policy No. 42988. Amount, $1,000.00. Cause unknown. Kindly give this your attention as soon as possible, and oblige, yours truly, M. O. Green."

Three days later one E. E. Flounders appeared at the scene of the fire, "having been detailed by said insurance company as its special agent to investigate the facts and circumstances of said claim loss and the amount thereof and report the same to the company's general officers for their action thereon." We quote from the nonwaiver agreement signed by the insured and the defendant insurance company by W. H. Sweatt, who was secretary of said company at that time. The said nonwaiver agreement further provides:

"The said special agent shall proceed to investigate the facts and circumstances of said claim loss and the amount thereof, and to agree with said assured upon such amount in accordance with the policy provisions if such agreement can be reached; and such agreement is to be without reference to any other question which has arisen or may hereafter arise under said policy. The assured hereby acknowledges that he understands and agrees that the undersigned special agent has no authority to waive, modify, or strike from said policy, any of its conditions, nor to revive the same should it have become void from any cause."

And it further contains the following agreement:

"In accordance with the foregoing we have this —— day of ——, A. D. 1911, agreed that the loss on said policy is as follows: Value at time of fire on house, $735.00; on furniture and contents, $500.00; on carpenter tools,

$65.45; on telephone and fixtures, $72.55— total, $1,373.00. And the insured hereby agrees that the value of the respective items immediately preceding said fire did not exceed the respective amounts stated above."

A few days thereafter, on July 15, 1911, another agent of said company was sent to the scene of the fire, one J. V. Sweatt, acting under another nonwaiver agreement, of which the following is a copy:

"Exhibit D

"Nonwaiver Agreement—In re Claim No. 21145.

"Whereas, since the making of the agreement setting forth the amount of loss under policy No. 42988, issued by the State Mutual Insurance Company to M. O. Green, the said company has been informed and verily believes that prior to the time of the fire one or more of the rooms of the dwelling house covered by the policy was occupied as a carpenter shop and general repair shop, and contained various combustible material not usually contained in a dwelling house; and

"Whereas, J. V. Sweatt, the special agent of said company, desires to ascertain from M. O. Green or her agent or representative any information that she may have in explanation of the information received by said company, and whereas the parties hereto desire to otherwise discuss the matter:

"Now, therefore, it is agreed and understood that the said J. V. Sweatt has no power to waive any provision, condition, or stipulation of said policy, or any breach thereof, and that anything that may be said between him and said M. O. Green or her representative or agent shall not be construed as an admission that said company is liable to the said M. O. Green for any amount, and shall not be construed as an admission that said company is not liable to said M. O. Green for any amount nor shall it be deemed a waiver of any condition, provision, or stipulation of the policy or any breach thereof.

"Witness our hands this 15th day of July, 1911.

"Mary O. Green.
"T. A. Green.
"J. V. Sweatt."

There is nothing further in the record regarding communications or negotiations between the parties hereto which would have any bearing upon the issues. The premium on the policy was retained by the company until some time in November, and, although the company was requested a number of times prior to the bringing of this action to pay the amount named in the policy, they did not comply with the request, nor did they enter into any agreement that they would pay any specified amount to the insured at any time. So far as the record shows no demand

that the insured furnish the proof of loss mentioned in the policy was ever made within the 60 days after the fire.

The plaintiff in her petition also prayed for a reformation of the policy of insurance here sued upon in order that the same might correctly set forth the number of the block in which the lots were, situated upon which the insured property stood. The policy gave the number of the block as 5, whereas the uncontradicted testimony was that it should have been block 51. The identity of the property which was intended to be insured is beyond question. The record shows a clear mistake of fact which was mutual and could properly be remedied by a reformation of the policy. However, the defendant contends that, even though a reformation might properly be granted under the proof, yet it was not proper to unite the action for reformation with the action or the contract of insurance. We think that the trial court committed no error in allowing the reformation of the policy. Cause was tried to a jury, and a verdict returned for the plaintiff upon all the issues submitted in accordance with which the court rendered its judgment. The defendant's motion for a new trial having been overruled, it has duly perfected its appeal to this court from said order and judgment.

Upon an examination of the excellent brief herein filed by the learned counsel for the insurance company, we are of the opinion that all of the assignments of error therein set out may be grouped and discussed under the following enumerated propositions:

(1) Did the trial court err in admitting the testimony of Antonio Green, husband of the plaintiff herein?

(2) Was the defendant insurance company charged with the knowledge of its soliciting agent as to the actual status of the title to the insured property?

(3) Did the wife have an insurable interest in the property insured?

(4) Did the defendant waive compliance with the requirements of said policy relative to giving notice of loss and furnishing proof of loss?

We shall discuss these propositions in the order above given.

The competency of the husband to testify in behalf of the plaintiff in this action seems to depend entirely upon whether or not he was acting as agent for the wife in the transactions concerning which he testified. There can be no doubt in all these matters the husband was acting for the best interests of the wife. The record shows that the wife, with full knowledge of all that he had done regarding negotiating with the soliciting agent of the defendant company for a policy of insurance on their home and its contents, signed the application for insurance upon his suggestion, and evidently depended upon him throughout the transactions. She is the beneficiary under the terms of the policy issued as the result of these negotiations with full knowledge of all his acts in her behalf. Her testimony clearly indicates both her intention to ratify the acts of her husband as well as an actual ratification. We conclude that the husband in so acting was the agent of the wife in all matters pertaining to the obtaining of the insurance policy, and was competent to testify regarding all such matters. Armstrong Byrd & Co. v. Crump. 25 Okla. 452. 106 Pac. 855; Smith et al. v. Travel, 20 Okla. 512, 94 Pac. 529; Bland v. Peters. 30 Okla. 798, 120 Pac. 631.

The next question we have to determine is: Was the insurance company charged with knowledge acquired by the soliciting agent at the time of obtaining the application regarding title to the insured property? It is conceded that the record title to the property was in the husband, and the proof is conclusive that it was the homestead of plaintiff and her husband. When the agent was negotiating with plaintiff's husband for the insurance, he informed the agent of the status of the title and asked the agent if he could have the policy made payable to the plaintiff. saying to the agent (and this testimony is uncontradicted):

"She has paid part for the lots and bought the furniture in it, and she has paid part of the money; she has paid most of the expenses, and I think she is entitled to the policy. Of course, I own the lots; they are deeded to me. But, I said, she is as much interested as I am."

The agent said, "Why, you can." And again in the same conversation, regarding having policy made to the plaintiff, the agent said, "It doesn't make a bit of difference." Thereupon the agent filled out the application blank with answers to the questions therein, one of said questions and answers being: "Have you title to the above land by warranty deed? Ans. Yes." This answer was written down by the agent without the knowledge, consent, or direction of either plaintiff or her husband. The soliciting agent of the insurance company, with full knowledge of the falsity of this answer, inserted same in the application. Whether his act in this respect was intentional or otherwise

has nothing to do with the proposition. The defendant company contends, and is not contradicted, that the real status of the title was not communicated to it by said agent, and that it depended upon the correctness of the answers in the application. Was the insurance company charged with the knowledge of its soliciting agent so acquired? In Vance on Insurance, p. 304, it is said:

"Any information material to the transaction either possessed by the agent at time of transaction or acquired by him before its completion is deemed to be the knowledge of the principal, at least so far as that transaction is concerned, even though in fact the knowledge is not communicated to principal at all. The insurer is charged with the knowledge acquired by his agent in making or negotiating a contract of insurance. It therefore follows that this incident, created by law, in response to the demand of public policy, irrespective of agreement, cannot be destroyed or altered by the agreement of the parties."

The case of Phipps v. Union Mutual Insurance Co., 50 Okla. 135, 150 Pac. 1083, recently decided by this court, was a case where the plaintiff in error made application through a soliciting agent for a policy to protect his crop from loss by hail. The application contained the following provision:

"In case of failure of crops, necessitating replanting, or for any other cause, deemed good and sufficient to the company, this policy will be canceled without charge and notes or cash returned, provided a request of the owner in writing * * * is received at the company's office prior to April 1st of current year."

On the same paper follows a heavy perforated line, below which is printed a form of receipt and memorandum to be detached and given to the applicant, and which in said case was alleged to have contained the following provision, after acknowledging receipt of the premium: "Subject to cancellation on or before April 23, 1911"—that being the year the policy was taken out. The plaintiff in error notified the company by registered mail April 7, 1911, to cancel the policy and demanded return of his premium note.

"Ordinarily," the opinion says, "a mere soliciting agent * * * has no power to bind the company to a contract of insurance nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein"—citing Dorman v. Ins. Co., 41 Okla. 509, 139 Pac. 262, 51 L. R. A. (N. S.) 873; Insurance Co. v. McClure, 39 Okla. 535, 135 Pac. 1150, 49 L. R. A. (N. S.) 1054; Insurance Co. v. Marsh, 34 Okla. 453, 125 Pac. 1100, 42 L. R. A. (N. S.) 996.

"In this case the soliciting agent was clothed by the company with the visible power and authority, manifested through the blanks he carried and the conduct he pursued in taking applications and procuring the company to issue policies thereon, to do anything necessary in the taking of this application. He had the right to fill it out, and it was his duty to do so honestly, and just as he had agreed with the applicant to do; and, when the applicant received his part of the contract, showing that he had the right to cancel, up to a certain date, he had the right to assume that the agent had so filled in the application. Not having done so, the agent's failure must be attributed to one of two causes: (1) That of oversight; and (2) that of fraud. And in either event, if one of the parties must suffer loss, such loss should fall on the company, whose agent, with authority in this particular matter, caused it."

And in the case of Allen v. Phoenix Ins. Co., reported in 12 Idaho, 653, 88 Pac. 245, 8 L. R. A. (N. S.) 903, 10 Ann. Cas. 328, the court says:

If "the insured truthfully and correctly stated the nature and condition of his title in making his application for insurance, he will not be precluded from recovering in case of loss on account of a contrary statement as to title, inserted in the policy."

In further discussing these principles in the case of Phipps v. Union Mutual Insurance Company, supra, Judge Brewer, delivering the opinion of the court therein, says:

"But we think it is equally well settled that even a mere soliciting agent may bind the company as to matters within the scope of his authority."

The Supreme Court of Iowa, in the case of Stone v. Hawkeye Insurance Company, 68 Iowa, 737, 28 N. W. 47, 56 Am. Rep. 870, regarding the authority of the soliciting agent of a fire insurance company, uses the following language:

"He was empowered by it [the company] to prepare such applications for persons desiring insurance, and to forward the same to it. He wrote the application in question in the performance of the duties of his agency; and, if the company was deceived or misled by the statement in the application that the building was insured, this was in consequence of the negligent or wrongful manner in which he performed the duties of his employment, and it is consistent with justice, as well as the settled principles of the law, that the consequence of his wrong should be visited upon his principal rather than upon plaintiff, who was guilty of no bad faith in the transaction."

See Wood on Insurance, sec. 384; Malleable Iron Works v. Phoenix Ins. Co., 25 Conn. 485.

And in Ostrander on Fire Insurance, p. 132, it is said:

"The agent appointed to solicit insurance and take applications will bind his company, when acting within the scope of his authority, as firmly as could the president of the company acting in the same relation. His knowledge in respect to any material fact affecting the condition or character of the risk is imputed to the company employing him, and will create an estoppel as to defenses that would otherwise be available under the policy."

The Supreme Court of Arkansas, in the case of Insurance Association v. Goyne, 79 Ark. 315, 96 S. W. 365, 16 L. R. A. (N. S.) 1180, 9 Ann. Cas. 373, uses the following language:

"An insurance company is estopped from disputing the truth of answers in an application * * * or policy to the effect that the company would not be bound by such representations of its agent."

And the courts of Colorado and Minnesota have held to the same general effect, and also have specifically held that disclosures relating to title to insured property made to the agent taking the application is knowledge which will by law be imputed to the insurance company issuing the policy (In re M. & M. Ins. Co., 97 Minn. 98, 106 N. W. 487, 4 L. R. A. [N. S.] 231, 7 Ann. Cas. 1144; Insurance Co. v. Duncan, 44 Colo. 472, 98 Pac. 634, 20 L. R. A. [N. S.] 340), and this principle is also adhered to and fully discussed in the case of Liesen v. Insurance Co., 20 N. D. 316, 127 N. W. 632, 30 L. R. A. (N. S.) 539.

We therefore conclude that the defendant was charged with knowledge of the real status of the title to said property as disclosed to its agent. Glens Falls Ins. Co. v. Michael, 167 Ind. 659, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708. See, also, Arkansas Ins. Co. v. Cox, 21 Okla. 873, 98 Pac. 552, 20 L. R. A. (N. S.) 775, 129 Am. St. Rep. 808; Roe v. Ins. Ass'n, 137 Iowa, 696, 115 N. W. 500, 17 L. R. A. (N. S.) 1144; Leisen v. Insurance Co., 30 L. R. A. (N. S.) 542.

Having concluded that under the facts in this case the company was charged with knowledge of the status of the title to the insured property as disclosed to the soliciting agent at the time he obtained the application for insurance, it logically follows that the insurance company is estopped from defending this action upon the ground that the application contains the representation that the plaintiff was the holder of the record title thereto, when, as a matter of fact,

it was in the husband. However, although the policy appears to be regular on its face, the suggestion arises that, if the wife, who is named as the insured in said policy, had no insurable interest in said property, then the whole transaction might be regarded as a mere wager and void as a contract of insurance. Did the wife, the plaintiff herein, have an insurable interest in the insured property, the record title thereto being in her husband, the said property being the homestead of herself and husband at all times mentioned herein?

In the case of Scott v. Dixie Fire Ins. Co., 70 W. Va. 533, S. E. 659, 40 L. R. A. (N. S.) 152, it was held that an equitable title to real estate carries with it an insurable interest in the buildings situated thereon, and this principle is now beyond question, and has been followed by the courts of this state in numerous instances. In the case of Insurance Company v. Coker, 43 Okla. 331, 142 Pac. 1195, it was held that a leasehold interest gave the holder thereof an insurable interest in buildings situated on the premises. Certainly the wife has an interest in the homestead of which she cannot be deprived without her consent in writing. Bunn's Const 305. The wife has an estate for life in the homestead where the record title thereto is in her husband. Rev. Laws 1910, sec. 6328. And in the case of Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920, it was held that the widow was entitled to occupy and possess the homestead as against the husband's heirs, and that an action for partition would not lie.

The Supreme Court of Mississippi in the recent case of Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 South, 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262, holds that either husband or wife has an insurable interest in the homestead; the record title thereto being in the other. And the Wisconsin Supreme Court in a more recent case, that of Kludt v. German Mutual Ins. Co., 152 Wis. 637, 140 N. W. 321, 45 L. R. A. (N. S.) 1131, Ann. Cas. 1914C, 609, holds that a man has an insurable interest in a house the title to which is in his wife, but which with her consent he occupies as a dwelling for himself and family.

We deem it unnecessary to cite further authorities along this line, as the overwhelming weight of authority upholds the principle that the wife has an insurable interest in the homestead notwithstanding the record title thereto is in the husband.

In the discussion of the foregoing propositions it has been demonstrated that the

plaintiff was the holder of a valid policy of insurance at the time of the fire. But the defendant contends that, even if this be true, nevertheless the trial court should have directed the jury to return a verdict in its favor at the close of the evidence, for the reason that the proof failed to show a compliance by the plaintiff with the requirements of the policy as to notice of loss and proof of loss, and for the further reason that, according to the contentions of the defendant, the plaintiff neither pleaded nor proved a waiver by the company of those requirements.

We agree with the defendant in his contention that a waiver of forfeiture must be both pleaded and proved. Insurance Co. v. Lynn, 42 Okla. 486, 141 Pac. 1167. While the plaintiff's pleadings may be subject to some criticism regarding the pleading of facts constituting waiver or estoppel yet, we do not think it fatally defective in this respect. The acts and conduct of the defendant company upon which the plaintiff relies to establish a waiver of the notice of loss and proof of loss provisions are sufficiently set out in the petition. Did the proof sustain the allegations of waiver? In our summary of the evidence in this case at the beginning of this opinion it will be noted that on the very day of the fire the insurance company received notice from the insured by telegram informing them of the loss of the insured property, giving the number of the policy, stating that the loss was total on both dwelling and contents, and signed by the plaintiff. On the same day the insured also wrote the letter to the company, the contents of which have been heretofore given, which sets out more of the details relating to the fire and consequent loss. In response to this the company sent its agent, Flounders, three days after the fire, who proceeded to investigate the same, acting under the first nonwaiver agreement hereinbefore set out. It will be observed that this nonwaiver agreement is between the insurance company itself, acting through W. H. Sweatt, secretary, and M. O. Green, the insured. The amount of the loss and agreed valuation thereof as shown by this instrument was between the insurance company and the insured, and no agreement was made, so far as the record shows, between E. E. Flounders, the agent of the company, acting under said nonwaiver agreement, and the plaintiff, M. O. Green, as to the value of the property destroyed by fire. It therefore appears on the records that on the same date that the said Flounders made this investigation the defendant company entered into a stipulation with the insured as to the amount of loss "under said policy."

There can be no question as to the effect of this nonwaiver agreement. Such agreements are generally used by insurance companies when sending an agent to investigate a fire, particularly where they have reason to believe that they may be able to show such a breach of conditions contained in the policy as to amount to a forfeiture thereof. Such agreements protect the company against a waiver of forfeiture of the policy or fraud on the part of the insured by acts or conduct of the agent acting under such agreement, but do not prevent a waiver by the company itself, where it accepts and ratifies the acts of its agent, or where it enters into a stipulation with the insured based upon the report of such an agent. Frank v. Switchmen's Union of North America, 87 Wash. 634, 152 Pac. 512.

On July 15th, about a week after the first nonwaiver agreement above discussed, the second investigating agent was sent by the defendant company, and another nonwaiver agreement was presented to the insured and signed by her. This second agreement, which is hereinbefore set out in full, gave the reasons for this second investigation as being that the company had received information that certain "rooms of the house were occupied as a carpenter shop and general repair shop and contained various combustible materials," etc. This investigation was made, and, so far as the record shows, the plaintiff and her husband furnished all the information requested by both this agent, whose name was Sweatt, and also the man Flounders, previously mentioned. During all this time, it will be remembered, the company was retaining the premium paid by the plaintiff, and there is no evidence that any demand was made for additional proof of loss during that period. There is no testimony that any request was made for additional proof of loss prior to the time the premium was returned, which, according to the defendant's testimony, was some time in November, about four months after the fire occurred. Were all these acts and such conduct as has been hereinbefore indicated on the part of the defendant company sufficient to constitute a waiver of compliance of the notice of loss and proof of loss requirements in the policy?

It is the well-settled law in this state that an insurance company cannot exact a strict compliance with warranties contained in the policy such as the "iron safe clause," or, as it is sometimes called, "book warranty

clause," and other similar provisions. It is sufficient if there is a substantial compliance with such requirements. It was held in the Scottish Union & National Ins. Co. v. Moore, Mill & Gin Co., 43 Okla. 370, 143 Pac. 12, that "the purpose of said clause is accomplished when the assured produces data from which the amount and value of the cotton insured and destroyed at the time of the fire can be reasonably ascertained; a substantial compliance with the warranty therein contained is sufficient." Whether it be considered that in the case at bar there was a substantial compliance or not, certainly there was a partial compliance with the requirements for furnishing notice of loss and proof of loss. The insured was certainly under no obligation to notify the company by registered mail of the occurrence of the fire when its agents were upon the scene of the fire in response to a telegram and letter from the insured sent on the very day the fire occurred. Then, if the notice of loss provision was thus dispensed with by the acts and conducts of the defendant itself, is it not also true that the plaintiff was in like manner relieved from making further efforts to comply with the proof of loss provision?

In the case of Insurance Company v. U. S. Bldg., etc , Ass'n, 54 S. W. 714, 21 Ky. Law Rep. 1207, the Supreme Court of Kentucky uses the following language:

"It has been repeatedly held by this court that an insurance company could waive such stipulations in a policy of insurance (referring to proofs of loss), and if the same were waived, or the company acted in such a manner as to authorize a reasonably prudent person to believe that it did waive such requirements, then in that event the insured need not make and forward the proofs stipulated for in the policy."

See, also, 19 Cyc. 857.

And the principle is also announced that notice of proofs may be waived by acts or conduct of authorized officers or agents inconsistent with the requirements. 19 Cyc. 861, and authorities. And it was held by the Supreme Court of this state, the opinion of the court being delivered by Judge Mathews this year, that:

"A provision in an insurance policy requiring proof of loss to be furnished the insurance company within 60 days from the fire is waived should the company within said 60 days deny liability upon other grounds than failure to furnish proof of loss." Continental Ins. Co. v. Chance, 48 Okla. 324, 150 Pac. 114; Scott v. Dixie Fire Ins. Co , 70 W. Va. 533 [74

S. E. 659, 40 L. R. A. (N. S.) 152] ; Okla. Fire Ins Co. v. Wagester, 38 Okla. 291, 132 Pac. 1071.

Although the act of the defendant company in the case at bar in sending the second investigating agent with written authority which set forth the only ground mentioned to the plaintiff upon which the company might deny liability would probably not amount to a waiver in itself, it is a circumstance which may be considered in connection with other acts and conduct on the part of the defendant which might reasonably have led the plaintiff to conclude that the defendant waived the furnishing of any further proofs of loss.

It was held by the Supreme Court of this state in the case of Arkansas Ins. Co. v. Cox, 21 Okla. 873, 98 Pac. 552, 20 L. R. A. (N. S.) 775, 129 Am. St. Rep. 808, that:

"Failure to notify an insured within a reasonable time after the filing of proofs of loss which are defective of the defect therein estops the insurer from afterwards objecting thereto."

This principle is also announced by the Supreme Court of New York in the case of Keeney v. Home Ins. Co., 71 N. Y. 396, 27 Am. Rep. 60. And in the case of Insurance Co. v. Griffin, 33 Okla. 178, 124 Pac. 300, the court holds in substance: That the receiving and retaining defective proof of loss without specific objection thereto is a waiver of any objection thereto is too well settled to merit citation. In such cases good faith would require that the association give notice indicating the defect and a failure to give such notice or refusal to object on other grounds is regarded as an acceptance of such defective proofs and a waiver of defects. See 19 Cyc. 862, and authorities there cited.

It has been held in several states that the retention of unearned premium by the company after knowledge of failure to comply with terms of the policy is evidence of waiver. Assurance Co. v. Long Clothing Company, 123 Ala. 667, 26 South. 655; Law v. Insurance Co., 29 U. C. C. P. 1. And in the case of Theriault v. Cal. Ins. Co., of San Francisco, 27 Idaho, 476, 149 Pac. 719. decided this year, the Supreme Court of Idaho says:

"Regardless of the clause in a policy that no officer, agent, or other representative of the insurance company shall have power to waive any of its provisions or conditions, where other proofs than those required in the policy are accepted by an agent authorized to adjust a loss, the company will be deemed to have waived the provisions of the

policy fixing the manner of making proof of loss."

Certainly the same principle would apply where, as in the case at bar, the proofs were submitted to the company itself without objection or suggestion of their insufficiency. In the case of Queen of Arkansas Ins. Co. v. Laster, 108 Ark. 261, 156, S. W. 848, it was said:

"When appellant's adjuster, in response to appellee's inquiry, said that he had 'all the proof he wanted,' this was a waiver of any further proof of loss on the part of appellant, notwithstanding the nonwaiver agreement. It was equivalent to saying to the appellee that appellant was satisfied as to his loss and had all the information pertaining thereto that appellant desired."

In the case of McMaster v. Insurance Co. of North America the Supreme Court of New York said:

"The proofs of loss are not part of the contract of insurance, nor a part of any contract. The contract of insurance requires that they shall be rendered, but it does not make them, when rendered, a part of itself." 55 N. Y. 222. 14 Am. Rep. 239.

And in the case of Ohio Farmers' Ins. Co. v. Glaze, 55 Ind. App. 147, 101 N. E. 734, it is said:

"A stipulation in a policy that 'no agent has power to waive any condition of this contract unless by written indorsement thereon' refers to conditions herein to make the contract obligatory and binding upon the parties in the first instance, and to its continuing force and obligation till loss occurs, but does not refer to stipulations requiring the assured to make proof of loss in a special manner, and such stipulations may be waived by an agent without indorsement. * * * Although an insurance policy on its face prohibits any agent from waiving any of its conditions where other proofs than those in the policy are accepted by an agent, of the company, duly authorized to act with reference to that subject, the company will be deemed to have waived the proof required by the policy."

See, also, Stevens v. Citizens In. Co., 69 Iowa, 658, 29 N. W. 769; Prussian Nat. Ins. Co. v. Peterson, 30 Ind. App. 289, 64 N. E. 102; Germania Fire Ins. Co. v. Pitcher, 160 Ind. 392, 64 N. E. 921, 66 N. E. 1003; Brock v. Des Moines Ins. Co., 106 Iowa, 30, 75 N. W. 683; Minneapolis Fire & Marine Mut. Ins. Co. v. Fultz, 72 Ark. 365, 80 S. W. 576; Hanover Fire Ins. Co. v. Gustin, 40 Neb. 828, 59 N. W. 375.

We therefore conclude that there was competent evidence tending to sustain the allegations of waiver in plaintiff's petition as to the requirements for notice of loss and proof of loss, and the trial court therefore properly overruled the defendant's motion for a directed verdict. There being evidence in the record reasonably tending to support the verdict of the jury, the defendant's motion for a new trial was properly overruled.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.